Upon this motion the action stood continued to this term, and now, after a short argument by Bidwett, Attorney-General, [ * 552 J * for the plaintiff, and B. Whitman, for the defendants, the , opinion of the Court was delivered by
Parsons, C. J.
The action was trespass vi et armis for taking and carrying away the plaintiff’s cows. On the trial it was proved or admitted that the collector of taxes for the north parish in Harwich had taken the cows as a distress, under a warrant issued by the defendants as assessors of that parish, for the plaintiff’s refusal to pay his parish taxes assessed by the defendants. The plaintiff, to maintain his action, contended at the trial that the assessment of the parish tax on him was illegal and void. A verdict being found for the defendants, the plaintiff has moved for a new trial on a variety of grounds.
He contends that there was no evidence of the existence of a north parish in Harwich, authorized by law to raise parish taxes.
On this point, it appearing from the regular evidence that no act of incorporation could be found, the judge very properly, in our opinion, permitted the defendants to prove a parish by reputation. It is a well-known fact that by two several fires in the town of Boston (1), a great part of the public records of the late province were burnt; and, unless the existence of a corporation could be proved by reputation, many towns and parishes would lose all their corporate rights and privileges. In the present case, it may be aud ed that the legislature, in the act incorporating the town of Brewster, recognize the existence of a north parish in Harwich, supposed *429 to have definite limits. These limits were proved by paroi evidence, and it was also proved that the" plaintiff and his estate were within them.
Another objection to the assessment is, that if there ever was a north parish in Harwich, its parochial powers and duties were merged by the incorporation of the town of Brewster, granted on the application of that parish.
* Brewster was created a town by the statute of 1802, [ * 553 ] c. 76., comprising, by the terms of the act, “ the northerly part of Harwich,” and the boundaries of the new town are particularly described, without any reference to the boundaries of the north parish. We cannot therefore conclude from the statute, that Brewster is included within the same limits, which circumscribe the north parish. And whether the limits of the town and the par ish are the same or not, does not appear from the report of the judge. If the limits are different, there seems to be no color for argument that the north parish is merged by the incorporation of the town of Brewster.
This point came before the Court formerly in this action, upon a motion to set aside a former verdict, and to grant a new trial; when it was decided that the parish was not merged, nor its corporate powers extinguished or surrendered by the incorporation of Brewster. And it seems that the plaintiff complains, that the judge would not suffer it again to be questioned before the jury. Certainly the judge was right, as it was merely a matter of law unmixed with fact; and if the plaintiff had been able to persuade the jury to find directly against law, he could not have had any fruits of his verdict, as the Court, in the necessary discharge of its duty, must have granted a new trial.
But the Court are willing to revise the former decision in this case, and if it was wrong, we shall most readily overrule it.
Parishes are incorporated with a very few powers and duties. They are authorized and obliged to elect and support some Protestant public teacher of piety, religion and morality; they may erect houses for public worship, and may have parsonages. To defray the expenses arising from the execution of these powers, they may raise money, by assessing it on the polls and estates of the inhabitants, and by collecting it, for which * purpose [ * 554 ] the parish collector is invested with authority to compel payment. Towns are municipal corporations, with power to assess and collect money for the maintenance of schools and of the poor, and for the making and repairing roads, and for some other purposes. Several parishes are often incorporated within the limits of a town, and, sometimes, a single parish embraces parts of different *430 towns. But when no part of a town is included in, or constitutes a parish, the duties of a parish are required of the town, who are obliged to maintain and support public religious worship. Thus the municipal and parochial powers of towns and parishes may be distinct ; and an inhabitant of a town has not unfrequently by the legislature been made a parishioner of a parish not within his town, while his municipal rights and duties remained unaltered. The statute of 1785, c. 54., may be cited as an instance (1). There is, therefore, no inconsistency in the inhabitants of the same territory forming a town, and also being made a distinct corporation with parochial powers.
But when a parish is invested with all the municipal powers of a town, if it thereupon ipso facto ceased to be a parish, great inconvenience and mischief would follow. At common law, one corporation aggregate cannot be a successor to another aggregate corporation. Now a parish may have settled a public teacher, to whom the inhabitants have contracted to give an annual salary; the parish may be the owner of a house for public worship; and the public teacher may be seised of a parsonage/wre parochice. Upon creating the inhabitants a town with municipal powers, this new corporation is distinct from the parish, and is not a successor to it, on whom may devolve the parish property and contracts. If, then, the parish is extinguished, the contract with the public teacher is annul- [ * 555 ] led, and the parochial * real estate would revert to the grantor or his heirs, from whom the parish acquired it. The principles of moral justice, and of public convenience, are therefore repugnant to the position of the plaintiff, that the investing of a parish with municipal powers by a legislative act, is an. extinction of the parish, or a surrender of the corporation to the commonwealth.
Since the incorporation of Brewster, the south parish in Cambridge has been made the town of Brighton; and it is within the knowledge of some of us, that in the practice of that town the parochial and municipal powers are kept distinct, and severally exercised, as belonging to different corporations. And it cannot be supposed that the legislature would, by making a town of a parish, extinguish the parish, unless care was taken in the statute to devolve on the town all the rights, duties and property of the parish.
Another objection to the verdict is, that admitting the existence and parochial powers of the north parish, yet the money voted to *431 be raised by the parish by assessment, a part of which was assessed on the plaintiff, the parish were not authorized to raise.
A parish may by law purchase and hold a parsonage, and the minister is in fact seised of a parsonage in right of his parish. If, therefore, the right of the parsonage is questioned at law, the parish may defend their right; and the necessary expenses of this defence are a charge on the parish, and may be defrayed by money raised by a parish tax.
Let us now examine this objection. The statute incorporating Brewster enacted, in the fourth section, that town lands and min isterial property owned by said town (meaning Harwich before the division) should be equally divided between the two towns, viz. Harwich and Brewster. Upon this section, Harwich preferred a petition against Brewster, for partition of the lands and property owned by the town of Harwich before the division ; * and [ * 556 ] among other lands, partition was prayed of certain lands which the minister of the north parish claimed as parsonage land jure parochice. As Brewster was alone summoned to answer to Harwich, the former town appeared by its agents to support the claim of the minister of the north parish. Although the north parish, as a parish, was not summoned, nor a party to the suit on record, yet as all the expenses of supporting the claim of their minister were incurred for their use and benefit, in equity and good conscience, the parish ought to defray those expenses; and we are of opinion that the judge did right in overruling this objection.
The defendants appear to have maintained the issue on their part, by proving the existence of the north parish in Harwich, that they were the assessors of that parish duly qualified to make legal assessments on the polls and estates of the inhabitants, that the sum assessed was legally voted to be raised, and that by law a part of it might be assessed on the poll and estates of the plaintiff, he being an inhabitant of the parish.
But the plaintiff further objects, that the defendants, in making the assessment, acted illegally in omitting to assess the lands of certain non-residents liable to be assessed; and consequently that the tax on the polls and estates of the inhabitants, of which he is one, is higher than it ought to be.
There seems to have been a former practice for Harwich to make some agreement with the towns adjoining, that neither of the towns should tax the lands of non-residents who were inhabitants of the other town, with some exceptions. An agreement of this nature was made by Harwich with Yarmouth, as far back as 1709, for fifty years, which was revived in 1752 : Another agreement of this kind was made by Harwich with Eastham, in 1762, and with Chatham, in *432 1795, and again in 1797: And since the incorporation [ * 557 ] of Brewster, * Harwich, in 1803, made a similar agreement with Orleans, agreeing to pay Orleans an annual sum of 17 dollars, 17 cents, as a consideration of the agreement. Agreeably to this practice, Brewster and Orleans, in 1803, agreed not to assess the lands of non-residents, who were inhabitants of either town; and as this agreement was beneficial to Orleans, that tow n was to pay Brewster the annual sum of 10 dollars, 37 cents, which has been paid for two years.
Imitating this practice, the assessors of the north parish omitted to tax the lands of non-residents, who were inhabitants of Orleans. Whether the annuity paid by this last town is, or is not a full equivalent for the tax on non-residents’ lands, so that each inhabitant of Brewster has the benefit of the agreement, by lessening the sum to be assessed, it is not material to ascertain. For we are all of opinion, that notwithstanding this agreement, the assessors of the north parish acted irregularly, and without legal authority, in omitting to tax the lands in that parish, the property of the inhabitants of Orleans; and of this opinion was the judge who tried the cause. To this agreement, if valid in law, the north parish were not a party. But the agreement is unquestionably invalid.
It is dangerous to attempt being wiser than the law. The general tax acts direct in what manner public taxes shall be assessed by the assessors of towns ; and the lands of - non-residents are expressly directed to be assessed by the assessors of the towns in which they are situate, and provision is made for the collection of those assessments. And by the statute of 1785, c. 49. <§> 8., all county, town and parish taxes are to be assessed by the same rules which regulate the assessment of public taxes.
The last question is, whether, in consequence of this irregularity, the assessment complained of is void, and the assessors [*558] answerable in this action as trespassers * with force and arms. The judge who tried the cause was of opinion that the defendants were answerable as trespassers, and so directed the jury, who, notwithstanding, probably influenced by the supposed equity in their favor, acquitted them. This is the foundation of the last objection to the verdict, that it was found contrary to the direction of the judge in a matter of law. And if the direction of the judge was right, the objection must prevail.
If the objection prevail, the conclusion is that the whole assessment, and the warrant issued to collect it, are illegal; and the collector is not obliged to obey his warrant, or to collect the tax of any person assessed; but if he do, he may not be a trespasser, and he may receive of any person his tax, for volenti non jit injuria
*433 It deserves great consideration, before we decide that an assessment, through an error in judgment, or mistake of the assessors, is void, so that no part of it can be collected. A great portion of the funds of the government arises from annual assessments made by town and district assessors ; and county, town, and parish charges are generally to be defrayed by money raised in the same manner. The inconveniences suffered by any of these corporations, from a void assessment not to be collected, is manifest. They must be in arrear in discharging their contracts, and their creditors will be injured by the delay of the payment of their dues. This delay will fall heavily on men supported by annual salaries; and the provision for the poor will be embarrassed, unless the overseers charge the towns with a new debt for supplies procured on credit for their maintenance.
When we consider further, that mistakes by assessors, however attentive to their duty, will be very frequent in omitting taxable polls and estates in their assessments; sometimes from want of knowledge of all the inhabitants, and especially in large towns; and sometimes from misapprehension of the liability of persons or * estates to taxation, great confusion would be the con- [ * 559 | sequence of holding assessments affected by these errors to be void.
The statute contemplates that assessors may mistake in the quail turn assessed on the polls and estates of any persons, and has given a remedy by appeal to the Sessions, which appeal is now transferred to the Common Pleas. And as there is no statute provisions declaring an assessment in any case void, its nullity must result from the principles of the common law applicable to the case.
Now, when judicial officers, deriving their authority from the law, mistake or err in the execution of their authority, in a case clearly within their jurisdiction, which they have not exceeded, we know of no law declaring them to be trespassers vi et armis. If the law were otherwise respecting assessors, who, when chosen, are compellable to serve or pay a fine, hard indeed would be their case. But the same law must apply to them, as to inferior judicial officers. If, therefore, the persons acting as assessors have been duly chosen and qualified to execute that office, if the sum assessed has been legally ordered to be assessed, if the assessment be made, and the warrant of collection be issued by them, or a major part of them, in due form of law, and the poll and estate of the party complaining of the assessment be legally taxable, he cannot, in our opinion, maintain an action against them as trespassers vi et armis, for any mistake or error of theirs in the exercise of their discretion.
Unquestionably the assessors may be punished for malfeasance in *434 their office on information or indictment. And we would not be understood as deciding that a man injured by the assessment, in being compelled to pay beyond his legal proportion, by the malfeasance of the assessors, may not maintain a special action of the case against them, to recover a sum equal to the excess [*560] * of his tax beyond his legal proportion. As, however, that case is not before us, we give no opinion.
But we are all satisfied, that for an error in judgment committed by the assessors, in omitting to assess some taxable estate, they are not answerable as trespassers with force and arms. It is, therefore, our opinion that the jury did right in acquitting the defendants ; and the judge, before whom the cause was tried, having since the trial had time fully to consider the subject, which was impossible in the course of it, is now satisfied with the verdict.
A new trial cannot be granted, but judgment must be rendered on the verdict.

 1711 and 1760.

 This was "An act to set off J. P. from the south parish in Ipswich, in the county of Essex, and to annex him to the first parish in Rowley"