Bradford      circumstance escaped the vigilance of the counsel or the con
    *v.*      sideration of the court.[2]
Randall.

*Judgment for the defendants.*

ROBERT INGLEE *versus* NOAH BOSWORTH *et al.*

The circumstance, that in the assessment of a tax some individuals are assessed who
    are not liable to the tax, does not vitiate the assessment as respects those who are
    liable ; and a second assessment made for the purpose of rectifying the error, is
    illegal and void.

Where a religious society voted to raise a sum of money, without appropriating it,
    intending that it should be assessed on a valuation of the 1st of May following and
    be applied to defray expenses to be incurred after that day, it was *held*, that a per-
    son, who separated himself from the society after the vote and before the 1st of May,
    was not liable to the assessment.

*Held* also, that a person whose property had been taken by distress to pay a tax thus
    illegally assessed, might maintain an action of trespass against the assessors, or
    for money had and received against the society to which it had been paid.

TRESPASS *de bonis asportatis.* The defendants pleaded
the general issue and a justification as parish assessors in
Halifax.

On the trial in the Court of Common Pleas, before *Wil-
liams* J., it appeared in evidence, that on the 26th of April,
1824, the parish voted, that the sum of 350 dollars should be
raised for defraying the necessary charges of the parish ; and
at an adjournment of the same meeting, held on the 10th of
May following, it was voted to appropriate 300 dollars for the
minister's salary out of the money raised at the then present
meeting ; as appears by the records of the parish. On the
30th of April, 1824, the plaintiff filed with the clerk of the
parish a certificate that he was a member of a religious society
in Hanson. The defendants were assessors of the parish for
the years 1824 and 1825, and until April 27, 1826. In
November 1824 they made an assessment of the sum of 350
dollars, voted to be raised as above mentioned, upon the polls
and estates of the inhabitants of the parish, upon a valuation
taken by them as of the first of May, 1824, and committed

---

[2] A seal is not now required in Massachusetts, to the warrant of assess-
ors. Revised Stat. *c.* 23, § 38.

the bills, together with their warrant for the collection thereof, to the collector of the parish. After the greater part of the taxes so assessed had been paid to the collector and by him paid into the parish treasury, the defendants reclaimed and took the bills from the collector, in order to make a re-assessment of the sum mentioned. They accordingly proceeded to re-assess the same upon the valuation of May 1824, and in March 1826 delivered the bills, together with their new wai·rant, to the same collector. The reason assigned by the assessors in their second assessment, for re-assessing the sum, was, that certain persons and estates were included in the first, which were supposed to belong to Halifax and to the parish, but which, on a legal adjudication in November 1825, were held to belong to Plympton and to another religious society ; and it appeared that 8 dollars and 61 cents were in the first assessment assessed on the polls and estates of persons living on the disputed territory. The plaintiff was taxed for his poll and estate in both assessments. The same person was collector for the years 1824, 1825 and 1826, and on the collection of the new assessment, the payments which had been made on the first were all allowed by the collector. The plaintiff having neglected to pay his tax on the first assessment, and refused to pay it on the second, the collector, by virtue of the assessors' second warrant, distrained and sold the plaintiff's steers ; which was the trespass complained of.

Upon this evidence the judge ruled, that the re-assessment and warrant issued thereon were void, and directed a verdict for the plaintiff ; to which direction and opinion the defendants excepted.

The defendants also moved in arrest of judgment, on the ground that trespass will not lie against assessors where they have acted with upright intentions.

*Eddy*, in support of this motion, said that the action should have been brought against the parish, the assessors being " responsible only for their own integrity and fidelity." *St* 1823, c. 138, § 5. [See *Ingraham* v. *Doggett et al., ante, p.* 451.] These are qualities of the mind and heart, and the question whether the defendants have been honest and faithful cannot be tried in an action of trespass. If however the form

500
Oct. 26th

Inglee
*v.*
Bosworth.

of action is right, dishonesty and unfaithfulness must be proved, in order to render the defendants liable. 2 Bl. Com. 15 ; *Dillingham* v. *Snow,* 5 Mass. R. 559 ; *Bartlett* v *Crozier,* 15 Johns. R. 250 ; *Seaman* v. *Patten,* 2 Caines's R. 312 ; *Sutton* v. *Clarke,* 6 Taunt. 29.

In regard to the exceptions, he contended that a tax might be re-assessed whenever there was a reasonable cause for it , of which the assessors were to judge ; that in order to justify a second assessment, it was not necessary that the first should be illegal and wholly void ; *Libby* v. *Burnham,* 15 Mass. R 144 ; that under the circumstances of the case at bar it was not safe to collect the tax as first assessed, and a new assess ment was requisite in order to collect the whole sum voted to be raised ; and that the plaintiff was liable for his propor tion of the tax, by virtue of *St.* 1823, *c.* 106, § 2, notwith standing his separation from the parish.

*Baylies* argued on the part of the plaintiff. As to the form. of the action, he cited *Agry* v. *Young,* 11 Mass. R. 220 ; and to show that a re-assessment cannot be made unless the first assessment was illegal and void, he referred to *Pond* v. *Negus,* 3 Mass. R. 230.

*May term 1828, in Plymouth.*

MORTON J. delivered the opinion of the Court. It was by virtue of the collector's warrant for the collection of the tax re-assessed that the distress was made ; and the justification of the defendants rests upon the validity of this re-assessment If the first tax was legally assessed, the re-assessment was void. The objection to the legality of the first assessment is, that the assessors, by mistake, included several persons who were not inhabitants of the parish nor liable to be taxed in it. The taxes against these individuals could not be collected. This would leave a deficit in the sum to be raised, but would not affect the relative proportions of the persons liable to taxation. The effect upon the parish would be the same if some persons legally assessed proved to be unable to pay their taxes. The deficiency could be supplied by increasing a subsequent tax.

The accidental omission of any taxable polls or estate, in the assessment of any county, town or parish tax, although it would increase the proportions which those assessed would be holden to pay, would not render the whole assessment void.

5 Mass. R. 547. In all towns it would be difficult, and in large ones almost impossible, for the most vigilant assessors to make any tax entirely correct, so that no polls or estate not liable to taxation should be included, nor any which are liable should be omitted. To hold assessments to be void for these causes would be productive of immeasurable inconvenience in raising the revenues necessary to defray the expenses of the State, and of the counties, towns, and other corporations in it. We are therefore of opinion, that the first tax was legally assessed and might have been enforced against all persons rightfully included in the lists.

Another question raised in the case is, whether the plaintiff was liable to be taxed for the year 1824, in the parish of which the defendants were the assessors. We think he was not.

Assessments are made in reference to the first day of May. They are founded upon valuations taken by the assessors of each town and parish, which are intended to be correct invoices of the polls and estates in the respective towns and parishes liable to taxation on that day. Previous to the first day of May, 1824, the plaintiff had separated himself from the parish of which the defendants were the assessors, had joined a religious society in another town, and had furnished to the former parish the legal evidence of these facts.[1] He thereby became liable to be taxed in the society which he joined, and was as much exempted from taxation in the parish which he left, as if he had actually removed without its terri torial limits. If he remained liable to be taxed by the defendants, he was subject to taxation in two religious corporations at the same time, and holden to contribute towards the support of two religious teachers, upon the ministry of one of whom he did not attend. This would be alike unjust and inconsistent with that perfect freedom, in relation to religious opinions and the support of public worship, which is intended to be established and protected by the laws of this commonwealth.

The statute of 1823, c. 106, which prescribes the mode in which a member of one religious society may withdraw

---

[1] See Revised Stat. c. 20, § 4; *Sumner* v. *First Parish in Dorchester* Pick. (2d ed.) 363, n. 1; *Little* v. *Merrill*, 10 Pick. 546

from it and become a member of another, provides that the person withdrawing "shall remain liable to pay all such taxes as may have been actually granted or assessed against him previous to such separation." The plaintiff had not been actually assessed when he withdrew, and we think the tax had not been granted within the meaning of this statute, so as to render the plaintiff liable to be assessed for his propor tion of it.

By recurring to the records which are referred to in the bill of exceptions, it appears, that the money to defray the parish expenses for the year 1823 was granted in the month of May of that year. The vote passed April 27, 1824, to raise money to defray the parish expenses for that year, was prospective and the tax was intended to be assessed upon a valuation to be made on the first of May following; otherwise the expenses of two years would be brought into one; and two successive taxes be founded upon one valuation. This cannot be done. *Nason* v. *Whitney*, 1 Pick. 140, [2d edit. 144, n. 1.] Any person becoming an inhabitant of the parish after the passing of this vote and before the first of May, would have been liable to be assessed his proportion of it. The tax was not actually granted so as to bind the plaintiff, before the appropriation of the money at the adjourned meeting in May following. Until that time the whole subject was under the control of the parish, and the former vote might have been reconsidered and a different sum granted, or the parish might have omitted to make any grant. *Pond* v. *Negus*, 3 Mass. R. 233.[1]

**503**     The defendants do not bring themselves within the protection of the statute of 1823, c. 138, § 5. Although the money collected by this illegal distress and paid into the parish treasury, might have been recovered back by an action for money had and received against the parish (*Amesbury W. & C. Manuf. Co.* v. *Amesbury*, 17 Mass. R. 461, — *Sumner* v. *First Parish in Dorchester*, 4 Pick. 361; [*Boston* v. *Preston*, 12 Pick. 7]); yet in that form of action the remedy might not have been commensurate with the injury, and the

---

[1] See *Waldron* v. *Lee, ante,* 330, 331.

plaintiff was not bound to resort to that mode of redress.
The defendants were not " *required* " by the parish to assess
the money to be raised, upon the polls and estates of any
but taxable inhabitants of the parish ; nor to re-assess a tax
which had once been legally assessed. *Gage* v. *Currier*, 4
Pick. 399, [2d ed. 405, n. 1.][1]