EDWARD HERNDON *vs.* RICHARD J. SWEARINGEN.

*Error from Greene County Court.*

Where A. having purchased a note of hand of B, drawn in B's name by C. and D. and E. having a judgment against B, garnishees C. as B's debtor—Held, that when C. had, in pursuance of a judgment on such garnishment, paid the amount of the note to E, A. could not recover the amount back from E.—it appearing that no notice of possession of the note by A. had been given to C. and D. or E.

Assumpsit for money had and received.

In this case, the plaintiff, Herndon, had purchased of one Billings, a note of hand drawn by James and John Trussel, in favor of said Billings.

The defendant, Swearengen, having obtained a judgment before a justice of the peace, against Billings, sued out a garnishment against one of the Trussels, who answered, that he did owe to Billings the amount of the note above mentioned. On this answer, the justice of the peace rendered judgment against Trussel, the garnishee, for amount of the note and interest, which Trussel paid off to Swearengen. Herndon, the purchaser of the note, now brought the present action to recover of Swearengen the amount of the note so received. It did not appear that Herndon had ever given notice to the makers of the note, that he had possessed himself of it; and the court charged the jury, that as Swearengen had received the money by due course of law, Herndon could not recover it in this action; for if he possessed any means of recovery, it must be against Trussel on the note. To this opinion of the court, the plaintiff excepted, and assigned the same for error.

There was a verdict for the defendant below.

ERWIN, for Plaintiff—2 *Burr*, 1005—5 *Mun.* 178.

STEWART, *contra*.

By Mr. Chief Justice LIPSCOMB:

This was an action for money had and received, before a justice of the peace, from whose decision, which was in favor of the plaintiff in error, who was also plaintiff below; the defendant took an appeal to the County Court of Greene county. On the trial in the county court, as appears from the bill of exceptions, it was in evidence that on or about the first of December, 1830, the plaintiff purchased of one William Billings, a promissory note, of which the following is a copy, to wit:

" On the first day of March next, we or either of us promise to pay unto William Billings, or order, the sum of twen-

25

ty seven dollars and fifty cents, for value received.—October 18th, 1830.

Signed,    JAMES TRUSSELL,<br/>JOHN TRUSSELL."

It further appeared in evidence, that the note was delivered over to Herndon, the plaintiff, by Billings, at the time the purchase was made—that in May, 1831, Swearengen obtained a judgment against Billings, upon which he sued out a writ of garnishment against Trussell, one of the makers of the note, when the latter appeared before the justice as garnishee, and answered, that he owed Billings the amount of the note; whereupon the justice of the peace rendered judgment for the amount of the note, with interest. This judgment Trussell paid off and satisfied, to Swearengen. The plaintiff gave no notice to the makers of the note, that he had purchased it, and was the owner; nor does it appear, that either the makers of the note, or Swearengen, the present defendant, had notice, that the plaintiff was the owner.

Before the commencement of the suit, the plaintiff, Herndon, demanded the money from Swearengen. The court below, charged the jury, that as Swearengen had received the money by due course of law, from Trussell, the garnishee, upon the note, the plaintiff could not recover it from him. This charge of the court below is now assigned for error.

The position is assumed by the plaintiff's counsel, that in equity and good conscience, he is entitled to the money received by the defendant from Trussell, the garnishee, and one of the makers of the note purchased from Billings the payee. He contends, that his right to receive the money, was vested in him by his purchase, and that at the time of the judgment against the garnishee, Billings had no interest in the note subject to sequestration, consequently, that Swearengen, the defendant, has no better right than Billings, and cannot in equity and good conscience withhold the money from him. To support his doctrine, he relies mainly on the

doctrine laid down by Lord *Mansfield,* in the case of *Moses* Swearengen. vs. *McFarlane.*[a] I have examined that case, and it appears to me, that in itself, it bears no relation or resemblance to the one before us; and if any aid can be drawn from it, to support the plaintiff's action, it must be from maxims or principles laid down by his Lordship by way of illustrating the correctness of his opinion. The case was briefly this. Moses endorsed to McFarlane four several promissory notes, made to himself by one Chapman Jacob, for thirty shillings each, for value received, bearing date the 7th November, 1758. This was done to enable McFarlane to recover the money in his own name, against Chapman Jacob, but *previous to* Moses' indorsing the notes, McFarlane assured him *it* should be of no prejudice to him; and there was an agreement signed by McFarlane, whereby he, amongst other things, expressly agreed, that Moses should not be liable for the payment of the money, or any part of it, and that he should not be prejudiced, or put to any cost, or any way suffer by reason of such indorsement. Notwithstanding such express agreement and condition, and contrary thereto, McFarlane summoned Moses into the court of conscience upon each of these four notes, as the indorser thereof respectively, by four separate summonses; whereupon, Moses, by one Smith, who attended the court of conscience at their second court, as solicitor for him, and on his behalf, tendered the indemnity to the court of conscience, upon the first of the said four causes, and offered to give evidence of it, and of the agreement, by way of defence for Moses in that court. But the court of conscience rejected this defence, and refused to receive any evidence in proof of this agreement of indemnity—thinking that they had no power to judge of it; and gave judgment against Moses upon the mere fact of his indorsement (which he himself did not at all dispute) whithout hearing his witnesses about the agreement that he should not be liable"—for the commissioners held this agreement to be no sufficient bar to the suit in their court,

*vs.*

Herndon

a 2 Burrow, 1011.

Herndon
vs.
Swearengen.

and consequently decreed for the plaintiff, McFarlane, upon the undisputed indorsement made by Moses, and the money was paid by Moses' solicitor into court. This action for money had and received, was brought by Moses against McFarlane, to recover it back. There was a verdict for the plaintiff, subject to the opinion of the court, upon this question, " whether the money could be recovered in the present form of action, or whether it must be recovered by an action brought on the special agreement only." After taking time to advise, the whole court were of the opinion, that the action was well brought. Lord Mansfield delivered the opinion of the court. He lays down the rule, that if there is an obligation from the ties of natural justice, to refund the money, the law implies a debt, and gives this action, founded in the equity of the case. All of the cases put by his Lordship, by way of illustration, are those, where the money was either received or withheld in bad faith ; all of which may be admitted as sound law, and yet could not be made to apply to the case before us. There is nothing inconsistent with sound morality, in Swearengen holding on to the money that a court of competent jurisdiction had awarded to him, and for all the effect it could have, it might be conceded that the case of *Moses* vs. *McFarlane* was good authority. It has, however, been questioned, if not overruled. In the case of *Marriott* vs. *Hampton*,[a] it was ruled, that where money has been paid by the plaintiff to the defendant, under the compulsion of legal process, which is afterwards discovered not to have been due, the plaintiff can not recover it back, in an action for money had and received. The money had been paid, and a receipt given, but mislaid or lost, so that it could not be used on the trial. It was afterwards found, and this action was brought to recover back the money, and the case of *Moses* and *McFarlane* relied on. Lord Chief Justice *Kenyon* said, " I am afraid of such a precedent. If this action could be maintained, I know not what cause of action can ever be at rest. After a recovery

a 7 T. R. 268.

by process of law, there must be an end of litigation; other- Herndon
wise there would be no security for any person." vs. Swearengen.

*Ashurst*, of the same opinion.

*Groce*, J.—" Of the general principle, there can be no doubt; and though the last case cited, (Moses and McFarlane,) seems to throw some ambiguity upon it, yet some of the positions there stated, are so entirely repugnant to every principle of law, that I have less difficulty in disregarding the whole authority of it."

*Lawrence*, J.—" If the case alluded to, be law, it goes the length of establishing this—that every species of evidence which was omitted by accident to be brought forward at the trial, may still be of avail in a new action, to overrule the former judgment, which is too preposterous to be stated."

Mr. *Peak*, in his Treatise on Evidence,[a] after laying down the principle, that money paid, and judgment in the due course of legal proceedings, cannot be recovered back, says, that the contrary doctrine, ruled in *Moses* vs. *McFarlane*, has been much questioned. Judge *Chase*, in *O'Harra* vs. *Hall*,[b] says, "that the authority of *Moses* vs. *McFarlane*, had been always suspected, and has lately been overruled."

The other cases cited by the counsel for the plaintiff, *Wilson* vs. *Davison*,[c] and *Wakefield* vs. *Martin & Trustee*,[d] can have no application. They would have had some application, if a recovery was sought from Trussell, by the plaintiff, notwithstanding the payment made by him to Swearengen, under the judgment of the court, on the garnishment; but in that event would have been insufficient to procure a second recovery against him, for I consider that there can be no question, but that Trussell would be fully protected from a recovery if sued on his note, by the judgment on his garnishment—although the case of *Wilson* vs. *Davison*, in *Mumford*, would seem to go the length; that such judgment would not shield him from the payment of the note. In that case, the maker of the bond had been garnisheed by the attaching cre-

a Peak's Ev. 44.

b 4 Dal. 340.

c 5 Mumf. 178.

d 5 Mass. 558.

Herndon
vs.
Swearengen,

ditor, by a suit in chancery—and there had been a decree that he should pay the amount of the bond to the attaching creditor, on such creditor giving bond to refund as the court should afterwards direct. At that time there had been no notice to the maker of the assignment of the bond. Suit was commenced on it before the bond for refunding, required by the decree, had been given ; it was given, however, and the amount of the bond paid by the maker. On the trial of the suit at law on the assigned bond, it was ruled, that such payment was no defence. Now unless there be some rule of court, or law, in Virginia, not noticed in the report of the case, it seems to me, that it will be difficult to reconcile this decision to the principles of law, or to our notions of common justice. The decree of the court, (supposing it to have been regular, which was not questioned,) requiring the obligee of the bond to pay it over, was an act of law, and imposed an obligation paramount to the one contained in his bond, and the notice came too late to justify his disobedience to the decree. In my opinion, the argument, that he might have applied to the chancellor to set aside the decree, would have more strength, if it were applied to the assignee of the bond. If not sufficiently protected and secured by the refunding bond, he might have applied to the chancellor to set aside the decree; or for such other security as the circumstances of the case required. There was but one course left to the maker of the bond, after the decree ; and that was plain and simple, but paramount—it was obedienc to the law, as declared by the constituted authorities. The defendant relies on the decision of this court, in the case of the *Executors of Burdine* v. *Maltbie*. In that case, one Tilford was indebted both to Maltbie and Burdine. One Lewis holding a bill against Maltbie, the latter induced Tilford to place sundry notes in Lewis' hands, with instructions to apply the proceeds to the payment of the bill against Maltbie, as fast as collected.— Among other notes, was one against a man by the name of

Chew. Suit was brought in Tilford's name against Chew. Burdine's executors had, in the mean time, recovered a judg- ment against Tilford, and finding no effects of Tilford, out of which to satisfy the judgment, garnisheed Chew, and obtained a condemnation of the amount he owed Tilford, to the satisfaction of their judgment. Maltbie then filed his bill in chancery, and procured an injunction, enjoining Chew from paying, and Burdine's executors from receiving, the amount so condemned on the garnishment. On the final hearing, the court of chancery decreed in favor of Maltbie, which decision was reversed on an appeal to this court. It was the opinion of this court, that the debt due to Tilford was an equitable fund, out of which, both Maltbie and Burdine's executors, might seek satisfaction; and that Maltbie might have had his equity preferred, if he had used equal diligence: but he had given no notice, and by his negligence, and that of Lewis, had permitted the executors of Burdine to obtain a judgment of condemnation in their favor, of this fund—of which advantage they could not be justly deprived. The case before us is stronger, than the one just cited. In that case Maltbie interposed his claim before the money was paid; in this, the judgment was satisfied by the payment of the money before the equity of Herndon was heard of at all. But aside from the authority of an adjudged case, it seems to me there are many considerations against sustaining this action. The note alleged to have been purchased by Herndon, was payable to Billings, or order; there was no indorsement on it, and consequently, if he purchased for a valuable consideration, he only acquired an equitable right to the funds, that this chose in action was evidence of, and nothing more. It was an equity, that by diligence he might have had preferred, but he slept on his rights until the lesser or younger equity of Swearengen, had acquired the additional weight of a judgment in his favor, and an actual possession of the fund. Herndon's inactivity in asserting his equity, is the sole cause of his loss;

this he might have incurred, even if the note had been indors-ed to him, and his right had been clearly legal. In that case, if before notice of such indorsement, Trussell had purchased the judgment against Billings from Swearengen ; it would have been a good set off against the note ; or if he had made payment, it would have been a good bar—(*See Digest.*) The consequences he now reaps, are not worse. Were we to entertain this action, we do not know when there would be an end to litigation—we possibly might be again called on to decide on another claim, in some one else, superior to the plaintiff's equity : and it might be urged, that as it had been awarded to him, when another had a better right, he could not conscientiously retain the money. Again, it is not the policy of the law to leave the door to litigation so open, that a secret equity, unknown to the world, may be set up to the prejudice of an honest creditor, who has been wary and industrious, and used only the means the law afforded him, to collect the money. The silence of Herndon for several months, was certainly culpable negligence.

We are all of the opinion, that he cannot sustain his action—and, that

The judgment must be affirmed.