LITTLE
ROCK,
July, 1838.

BROWN
vs.
HICKS.

BROWN, EXECUTOR OF PHILLIPS *against* HICKS, ADM. OF PHILLIPS.

APPEAL *from Crawford Circuit Court.*

In a suit against a person in a particular capacity, as for example, against him in the capacity of sheriff, guardian, executor, or administrator, it is necessary to be stated in the declaration that he is sued "*as* executor, *as* administrator, &c."

The expression in a declaration "the plaintiff *being* the executor as aforesaid" is not a substantive averment of his sueing AS *such*, or in his representative capacity, and nothing by intendment can supply the allegation "AS executor as aforesaid."

A declaration against "A. B. executor of C. D." and refering to him afterwards solely by the expression "A. B. executor as aforesaid" is not a declaration against him *as* such executor, nor will he be liable in such action in his representative capacity.

The term "executor as aforesaid" or "*being* executor as aforesaid" are mere words of description; the term "*as* executor aforesaid" has but one meaning, which is fixed by law, and is, that the party sued is sued in his representative capacity.

It was error to permit a bill of sale of a slave to be read in evidence, upon proof of the hand writing of an attesting witness, when it appeared that such witness resided in the county where the suit was brought, and that he was at home a short time before the term at which the cause was decided, that he was absent on necessary business, and expected to return in a few months, no subpœna having been issued or served upon him, nor any effort made to take his deposition, and no other facts being proven to warrant the admission of proof of his hand writing.

It was error to permit the reading in evidence of a copy of a record of a bill of sale for a slave, executed and recorded in Kentucky, upon the testimony of the subscribing witness to such bill of sale, who stated simply that he believed the copy to be substantially the same with the original, but that he had not seen the original for many years, and when it did not appear that he had ever compared the copy with the original, nor did he pretend to say that it was an exact or sworn copy.

A bill of sale for a slave, is not of such a nature as is authorized or required by law to be recorded, in order to give validity or effect to the instrument, and to make it a part of the public documents and records of the country, and therefore the record of such a bill of sale is incompetent to prove the existence or execution of the original.

In an action brought by an administrator to recover a slave of his intestate, a legal distributee of the estate of such intestate is not a competent witness. He is legally interested in the event of the suit, although upon his *voir dire* he swears that he has received his portion of the estate, and receipted the administrator therefor, the receipt not being produced, or its non-production accounted for.

This was an action of detinue, brought, as the parties were described in the declaration by "*Arthur Hicks,* administrator &c. of John Phillips, deceased, against "*Richard C. S. Brown,* executor of the last will and testament of Thomas Phillips, deceased," for a mulatto woman slave. The defendant pleaded two pleas, *non detinet,* and the statute of limitations. The plaintiff took issue on the first, and replied to the

LITTLE
ROCK,
July, 1838.

BROWN
*vs.*
HICKS.

second that the action did accrue within five years, to which the defendant joined issue, and on the two issues, the case went to trial before a jury.

On the trial, the plaintiff offered in evidence a bill of sale for the slave in question, from Ellender Phillips to Thomas Phillips, and proposed to prove the execution and delivery of said bill of sale, by proving the hand writing of J. D. McGee, subscribing witness thereto. In order to warrant the admission of this evidence, the plaintiff proved, that one of the three subscribing witnesses was dead, that the second was the plaintiff in the action, and disqualified as a distributee, and that McGee, the other witness, whose place of residence was in the county of Crawford, had left the county and gone to Washington City, about a week before the commencement of that term of the court, and so was absent from the state. No subpœna had been taken out for him, no commission issued, or applied for to take his testimony, and no attempt made to postpone the cause, on account of his absence. Upon this testimony the court below, permitted the bill of sale to be proven, by proving the hand writing of McGee, and it was read in evidence.

The plaintiff then offered Samuel Phillips as a witness, who being sworn on his *voir dire* to ascertain his competency, stated that he was the son of John Phillips, the plaintiff's intestate, and had been as one of his children entitled to a distributive share in his estate, but that he was not interested in the event of the suit, because he had received his share of said estate from Thomas Phillips, when the latter was administrator of said estate, and given his receipt for the same. The receipt was not produced, nor shown to the court. Upon this showing the witness was permitted to be sworn and to testify.

The plaintiff then offered to read in evidence what purported to be a bill of sale for the negro in controversy, from Thomas Phillips to John Phillips and Nelly his wife, executed in Franklin county, Kentucky on the 14th May, 1822, and witnessed by Samuel Phillips. Appended to the copy offered in evidence was the certificate of Willis H. Lee, Clerk of the County Court of Franklin County, that "the within bill of sale" was acknowledged before him by Thomas Phillips, and duly recorded, dated Oct. 27, 1823, and the certificate of A. H. Rennick, clerk of the same court, dated Feb. 17, 1837, that the said copy is truly copied from the records of my office, as wholly as the same remains of record in my office," as also the certificate of Edward S. Coleman, " presiding justice of the peace in and for the

LITTLE
ROCK,
July, 1838.

BROWN
*vs.*
HICKS.

county of Franklin," that Rennick was clerk of said county court at the time he signed the certificate, and that his certificate was in due form of law. The court below determined that this authentication was not sufficient to authorize the copy to be read in evidence, and the plaintiff then examined the said Samuel Phillips to prove it to be a true copy of the original. He stated that he believed that it was a copy of the bill of sale, or the record thereof in Kentucky, but that he had not copied it from either, nor had he ever compared it with either, or seen any person copy it; that he had read the original bill of sale once *before* and several times *after*, he signed it as a witness, but that he had not seen it since 1823. He said, however, that the paper produced was a true copy of it, and had been sent him by mail from Kentucky, and that the person who sent it to him stated that it was a copy either of the bill of sale, or the record, but which he could not say, but believed it had been taken from the record. The plaintiff was also sworn, and stated, that he did not know where the original bill of sale was, and that he had never had or seen it, or made any enquiry for it. Upon this testimony the court permitted the paper to be read in evidence.

The jury found for the plaintiff on both issues, and judgment was rendered for the slave, or seven hundred and fifty dollars. The defendant then moved for a new trial and an arrest of judgment, which motions were overruled, and he appealed.

TAYLOR, for the appellant:

1st. Detinue may be supported against an executor, upon a bailment to the testator, where the goods have come to the executor's possession. But in no other case. In every other case he must be sued individually. 1 *Chit.* 81, 82, 122, 123; 1 *Saunders*, 216, a; *Com. Dig. Administrator* B 15; *Cowp.* 371, 374.

2d. Samuel Phillips, an heir and distributee of the estate, was not a competent witness. This is the general rule. 1 *Phil. Ev.*, 50, 51. 1 *Mawle*, and *Selwyn*, 9; 2 *Day*, 399. So a residuary legatee is incompetent even with a release. 1 *Phil. Ev.* 104. 4 *Camb.* 27.

The interest of the witness, when it appears or is admitted upon the *voir dire*, disqualifies, unless it is shown to have been removed by release, and the release be produced in court. 2 *Stark. Ev.* 755, 756, 760. *Corking vs. Gerard*, 1 *Camb.* 37. And the witness having acknowledged that he was interested, his own statement that his interest had been removed, or no longer existed, could not render him competent. 1 *Con. Rep.* 46; 2 *Stark. Ev.* 756, *in note* 1.

But a release to the administrator could be a discharge or acquittance only for so much of the effects of the estate as were then in the hands of the administrator, and were then due and payable. It could not by any language that could be used discharge subsequently accruing effects. 7 *Com. Dig. Release of personal things*, 229, 230, 231, 232; 4 *Maul. & Sel.* 423; 1 *N. R.*, 119; 9 *Mass*, 235; *Salk.* 575. And when the suit is for accumulating interest, to be added to the general fund of the personal estate, the release must be specifically of the witness's proportion or part of what is to be recovered in that suit, to render him competent. 3 *Stark. Ev.* 756, 758, in note 1; 9 *John.* 123; 13 *Mass R.* 391.

LITTLE
ROCK,
July, 1838:

BROWN
vs.
HICKS.

But a *receipt* is not a *release*. A release does and must in such a case as this operate as an estoppel. A receipt never does. A receipt leaves the party at liberty to show in any subsequent proceedings (in a suit, for instance, which he may bring to recover the very sum mentioned in the receipt itself,) that he has not received an amount corresponding with the import of the receipt, or any thing at all. But whenever an interested witness is rendered competent, by the interposition of a release, it must have the effect of producing a final and conclusive extinguishment of his interest. 3 *Stark. Ev.* 1044, 1272; 2 *T. R.* 366, 369.

But it was not in the power of the distributee while the estate was in a course of administration, to extinguish his interest by a release. Because that interest consisted not only of a right to receive from the estate, as it appears had in this case, but in a liability to refund. That was an interest which no person, but some or all of the other distributees or heirs could release. *Camp. Dig.* 68; *Sect.* 46.

3d. The bill of sale from Ellender Phillips was not admissible. First, for the want of relevancy. Second, want of proof.

The hand writing of a witness cannot be proved if the party have been guilty of any negligence, in not producing the witness. 7 *Com. Dig.* 447, and the authorities there cited. 8 *John. Rep.* 94; 5 *Cranch.* 13, 14; *Cock* vs. *Woodrow*, and *Spring* vs. *South Carolina Ins. Co.* 8 *Wheat.* 268. There was no attempt to produce the witness, before the resort to proof of his hand writing. If the witness can be produced he must. 1 *Phil. Ev.* 178, 179, 139, 419.

4th. The paper purporting to be a copy of a bill of sale from Thomas Phillips, to John and Ally Phillips, was improperly allowed to go in evidence. There was no attempt made to produce the original bill of

sale, before they resorted to a copy, or copy of a copy. Such a course is inadmissible. The plaintiff must have used every reasonable degree of diligence to obtain the original, and failed in his attempts, before such evidence could be received. 1 *Phil. Ev.* 399, 400; 6 *T. R.* 236, *Rex* vs. *Castleton*.

But a copy of a copy of any document can never be received in evidence, unless the first, from which the last is taken, be made a record by public authority, as enroled deeds. 1 *Phil. Ev.* 408, 410.

A copy of a copy can be admitted only under an authentication by the proper officer or its proof by comparison with the original. In this case there was neither authentication nor proof of comparison *Gilb. Ev.*; 1 *Stark. Ev.* 155, 158.

The original was neither searched nor accounted for in any way.

The document, if proved, would not have been relevant.

WALKER AND FOWLER, *contra:*

The court correctly permitted Samuel Phillips to testify. It is true he was one of the heirs of John Phillips, dec'd, but on his oath he stated that he had no interest whatever in the issue formed, nor had he any interest in the estate, that he had released his interest, and given a receipt. See *Archbold's Practice, p.* 171, where it is laid down clearly that it is not necessary to produce the release.

The bill of sale was correctly recorded and certified in the state of Kentucky. It needed no additional proof to give it authenticity, and the court below, improperly as it is conceived, excluded the certified copy of the bill of sale, until it was proven by one who had read and examined the original before it was recorded, and swore that it was a true and perfect copy from the original. The only other exception taken, is relative to the exclusion of evidence in the admission of the bill of sale from Elenor Phillips to Thomas Phillips. This bill of sale was proven by establishing the signature of the grantor after accounting for the absence or incapacity of the subscribing witnesses. 2 *Call.* 574; 4 *Johnson's Reports*, 461. Upon examination of the bill of sale it will be found that the evidence it afforded was not prejudicial to the appellant's interest, and could not have affected the decision of the jury. See 4 *Hening & Munford*, 550; 2 ditto, 55.

Unless the exception is to the authentication of the bill of sale, the court will presume that objection waived. See 2 *Littell*, 194.

LACY, *Judge*, delivered the opinion of the Court: This is an action of detinue brought by the appellee, administrator of John Phillips, deceased, against the appellant, executor of the last will and testament of Thomas Phillips, deceased, for the recovery of the slave in the declaration mentioned.

LITTLE ROCK, July, 1838.

BROWN
*vs.*
HICKS.

The declaration contains but one count, founded on a supposed case of bailment, and the unlawful detention of property. The defendant pleaded two pleas in bar of the action. The first was a plea of *non detinet*, and the second, a plea of the statute of limitations. The plaintiff took issue on the first plea, and put in his replication to the second —to which there was a joinder and issue. The parties went to trial on the issues thus formed, and the plaintiff to support his cause of action, read in evidence a bill of sale from Ellender Phillips, and a copy of a bill of sale from Thomas Phillips to John Phillips for the slave in controversy; and, also, called Samuel Phillips as a witness, who testified in the case. The defendant objected to the reception of the bills of sale, and the testimony of Samuel Phillips as inadmissible evidence, but the court overruled his objections, and suffered the testimony to go to the jury. He then filed three several bills of exceptions to the opinion of the court, setting forth the nature and character of the testimony received, and the circumstances under which it was offered, spreading the whole matter upon the record. The case was then submitted to the jury, who found the issues for the plaintiff, and judgment was accordingly entered up in his favor for the slave in question.

The defendant then filed a motion for a new trial, and one in arrest of judgment. The court overruled both motions. He then prayed an appeal to the Supreme Court, which was granted.

The assignment of errors presents several highly interesting and important questions for our consideration and decision.

The first is, that detinue will not lie against an executor or administrator, except where goods are bailed to the testator or intestate upon a contract to redeliver them, or where he sells and agrees to deliver specific goods at a future day, and the goods come to the hands of the executor or administrator. It is insisted, on behalf of the defendant, that the present action does not fall within either class of these cases, and therefore cannot be maintained.

This question we do not consider as now properly before us, because the record shows no such state of facts as would legally give rise to it. By a critical analysis of the declaration, it will be perceived that the

O

LITTLE
ROCK,
July, 1838.

BROWN
vs.
HICKS.

first object of our enquiry ought to be, to ascertain in what character the defendant is charged. In order that this matter may be put in a clear point of view, we shall have to copy the declaration:

"*Richard C. S. Brown, executor of the last will and testament of Thomas Phillips,* deceased, was summoned to answer *Arthur Hicks,* administrator of all and singular the goods and chattels, rights and credits of John Phillips, deceased, heretofore unadministered upon, of a plea that he render unto the said *Arthur Hicks,* administrator as aforesaid, a certain mulatto woman slave named Sylvia, about 35 years of age; and thereupon the said *Arthur Hicks,* administrator as aforesaid, by attorney complains. For that, whereas the said *Arthur Hicks,* administrator as aforesaid heretofore, to wit, upon the 1st day of May, 1837, at the county of Crawford, and within the jurisdiction of this court, delivered to the said *Richard C. S. Brown, executor as aforesaid,* a certain mulatto slave named Sylvia, about 35 years of age, belonging to and being part of the estate of John Phillips, deceased, heretofore unadministered upon, of great value, to wit, of the value of one thousand dollars, good and lawful money, to be delivered by the said *Richard C. S. Brown, executor as aforesaid,* to the said *Arthur Hicks,* administrator as aforesaid, when he, the said *Richard C. S. Brown, executor as aforesaid,* should be thereunto afterwards requested; yet the said *Richard C. S. Brown, executor as aforesaid,* although he was afterwards, to wit, on the day and year last aforesaid, at the county of Crawford aforesaid, requested by the said *Arthur Hicks,* administrator as aforesaid, so to do, hath not yet delivered the said mulatto slave named Sylvia, about 35 years of age, to the said *Arthur Hicks,* administrator as aforesaid, but hath hitherto wholly refused and still doth refuse, and unjustly detains the same from the said *Arthur Hicks,* administrator as aforesaid, to wit, at the county aforesaid, to the damage of the said *Arthur Hicks,* administrator as aforesaid, fifteen hundred dollars; therefore he brings his suit." The plaintiff in conclusion of his declaration, made profert of his letters testamentary on the estate of John Phillips, deceased.

Is the defendant here charged in his representative, or in his individual character? Wherever his name appears in the declaration, it will be seen that he is described "*executor as aforesaid.*" Do these terms charge him *as executor?* or are they any thing more than a mere personal description?

The court is well aware that there exists a very general and deep

rooted repugnance in the minds of a number of distinguished jurists

against what may be termed legal subtleties or technicalities, and that many of the more modern decisions have gone very far to free the rules of practice and evidence from these over nice distinctions and unmeaning absurdities. It is worthy of being remembered that all the higher and more enlightened judicial tribunals of our own country, as well as in England, have been extremely cautious in introducing these improvements, and have displayed a laudable zeal and resolution in guarding the science of correct pleading from all improper innovations and unwarrantable encroachments, well knowing that proper legal forms and their corresponding appropriate remedies have their true origin in the highest sources of inductive philosophy, and lie at the very foundation of all the great and essential principles of political liberty, as well as of civil justice;—and whenever they are lost sight of, or totally disregarded, the spirit and substance of things cannot and will not be long continued or preserved.

The object of all judicial proceedings is to arrive at legal certainty, and by this is meant certainty in general, in the names and characters of the parties that sue or are sued; certainty in the cause of action and breaches assigned, certainty in the issues and verdict, and certainty in the judgment and its incidents. This can only be arrived at by a fair and reasonable interpretation of the words used and their intendment, of the context and subject matter in dispute, of the supreme will or intention of the law, of the evils complained of, and of the remedies to be applied. It follows from these rules that the demandant or plaintiff, and the tenant or defendant, should be therefore well named, that the court may see in what character or capacity the parties sue or are sued, in order that they may be able to pronounce a valid judgment.

If a plaintiff sue a defendant and his cause of action arises against him out of his office, he should be named or described in the declaration by his title of office. For instance, a suit against a sheriff or collector. So, if land be demanded of a person held in right of his church, or if dower be demanded against a guardian, or an action brought against an heir. In all these cases the defendant should be charged, *as sheriff, as collector, as parson, as guardian, and as heir;* for without such an allegation, or one of equal certainty, a party cannot be held responsible in his representative character. 15 *Edd.* 4, 27; *T. H.* 1, 6, 64; *S.* 4. And in an action against an executor, the

LITTLE
ROCK,
July, 1838.

BROWN
vs.
HICKS.

plaintiff ought to name the defendant *as executor*, and if he fail to do so, unless it somewhere appear in the pleadings, or by the assignment of the defendant, that there is a substantive allegation charging him *as such*, he cannot be considered as sued in his representative character. 1 *Salk.* 296; 2 *Bos. & Pull. Brigden* vs. *Parkers*, 424; 1 *Com. Dig. Abatement*, 89 (*F.* 20,) *Ibid, Pleader* (2 *D.* 2.) If the rule was different, the defendant could not plead *ne unques executor;* or that he was not an administrator, or any thing else that would abate the suit or writ. *Rattoon* vs. *Overacker*, 8 *Johnson's Rep.* 97: 2 *Call*, 49.

Where the process is to answer the plaintiff in a special character or right, as if it describe him as suing *qui tan*, or *as executor*, or *as assignee of a bankrupt*, the declaration can only be in the same character or right; and if the plaintiff declare generally, the court will set aside the proceedings.

And if it has been ruled that, although the process describe the plaintiff "*being the executor*, or *administrator*, or *the assignee of a bankrupt*," without introducing any words that showed that he was *sued as such*, the plaintiff might nevertheless declare generally, treating the description as a mere superfluous addition, just as if any other idle, or unmeaning word had been in the declaration. 1 *Chit. Pleadings*, 284; *Tidd's Prac.* 450; 8 *T. R.* 414; 3 *Wils*, 616; 4 *Bur.* 24, 17; 3 *Chit. Prac.* 182.

In the case of *the Dean and Chapter of Bristol* vs. *Guyse*, reported in 1*st Saunders*, 112, it was objected upon demurrer that the plaintiff had mistaken his cause of action, for the defendant is sued in his own right, and not as executor, as he ought to have been. *Fitz. Brief*, 111, 940. The counsel for the plaintiff said if it was not on the roll, that he would ask leave to discontinue. But on examining the roll it was found that although the defendant was not named *as executor* in the beginning of the declaration, yet in the subsequent part of it, he was so declared against, and consequently the averment was held to be good. For in the declaration it was expressly averred that William Guyse made his will and appointed the defendant executor, and entered, and was possessed *as executor*. This averment, the defendant might have traversed, and this was the reason why the allegation that he entered and was possessed *as executor*, was deemed sufficiently certain to charge him in his representative character. *Holiday* vs. *Fletcher*, 2 *Ld. Raym.* 1510; *Kamns* vs. *Hughes*, 7 *Bro. Prac. Cas.* 550.

The principle here decided is directly in point, and the case cer-

LITTLE
ROCK,
July, 1838

BROWN
vs.
HICKS.

tainly a very strong one.   But it is not altogether so conclusive as the case of *Hempstall* vs. *Roberts and others*, reported in *5th East*, 154.

That case is a counterpart of the present one, and essentially the same in all in facts and allegations.   There the action was upon a promise alleged to have been made to the plaintiffs, *Executrix and Executors as aforesaid*, and a profert was made of the letters testamentary; and there were also other counts in the declaration, showing that the plaintiffs sued in their representative character.   Upon this state of case, it was argued that by a necessary implication, as the promise was alleged to have been made to the plaintiffs themselves, *Executrix and Executors*, it must be taken to be made to them in their representative character, and meant the same thing as if it had been said *as Executrix and Executor as aforesaid*; and more especially as the latter words *as aforesaid* had reference to the antecedent counts, in which it is admitted that they sued in their representative characters.   This position was, however, deemed untenable, and Lord Ellenborough in delivering the opinion of the court, said that the allegation in the declaration, the plaintiffs *being the Executrix and Executors as aforesaid*, is not a substantive averment of their suing *as such* or in *their representative capacity*, and that nothing by intendment can supply the allegation *as Executrix and Executors* as aforesaid.

The case there decided is similarly situated in all its features and proceedings, with the one now under consideration, and the allegations in the two declarations are identically the same.

In both cases the letters testamentary were brought into court, but there the plaintiffs were suing, and the action founded on a promise made to themselves.   Here the defendant is sought to be charged on a supposed case of bailment.   In that case there were other counts in the declaration, which showed conclusively they sued in their representative characters.   Here there is but one count, and it no where appears, either in the beginning, the body, or conclusion of the declaration, that the defendant is charged *as Executor*.

The allegations in each declaration are precisely the same, and even the terms of expression exactly similar.   How, then, does the present case stand?

It is evident that there is no allegation or averment in the plaintiff's declaration, charging the defendant *as Executor*, or any words tantamount or equivalent thereto; and it is equally certain that, unless there is some such allegation, he cannot be held responsible in his rep-

LITTLE
ROCK,
July, 1838.

BROWN
vs.
HICKS.

resentative character.   The term " *as Executor* " is not words of form, but of *substance,* essentially entering into the nature of the averment, and constituting the substance or gravamen of the action.

There is a striking and wide difference between the averment in a declaration " *Executor, or being Executor as aforesaid,*" and the direct allegation " *as Executor aforesaid.*"   In one instance, *Executor, or being Executor as aforesaid,*" are mere words of description, having exclusive reference to personal identity :   In the other, the term " *as Executor aforesaid,*" has but one meaning, which is fixed by law, and that is the party against whom the charge is made, is sued in his representative character.

This being the case, the defendant in the action is not charged *as the Executor of Thomas Phillips, deceased;* for the declaration no where alleges that he was sued *as such,* and the words used, *Executor as aforesaid,* are mere matter of description and surplusage; and the antecedent *as aforesaid* refers only to the personal description of the defendant.   Indeed, it is very questionable whether the plaintiff himself any where shows that he sues in his representative character, and certainly he does not, unless the declaration and subsequent pleadings clearly establish that fact.   The questions still remaining to be decided by the assignment of errors, we will now proceed to dispose of in the order they have been made.

The bills of exceptions furnish a concise statement of the proceedings of the court below, and they set forth with certainty and perspicuity the grade and nature of the evidence received, and the circumstances under which it was admitted.   That the court erred in permitting the bill of sale from Ellender Phillips to Thomas Phillips to be read in evidence, is most certain.   It was admitted upon the proof of the hand-writing of J. D. McGee, the only attesting witness that was examined as to its execution, or that was sworn upon that subject.   It was not shown that the witness had become interested after his attestation, or that he had become infamous by the conviction of a felony, or that he was dead, insane, or that he was beyond the jurisdiction of the Court, or that it was utterly impossible, by due diligence or inquiry, to obtain his testimony, or to procure his personal attendance.   It is stated that the witness resided in the county where the suit was brought, and that he was at home a short time before the term at which the cause was decided; and that he was absent on necessary business, and expected to return in a few months.

No subpœna was issued, or served upon him; nor was there any effort made to take his deposition, or to secure his personal attendance.—— Such being the state of the case, it was clearly inadmissible to suffer the hand-writing of the attesting witness to the bill of sale, to be proved, and thereby establish the execution of the instrument itself by secondary evidence. This assignment of errors is, therefore, well founded. 1 *Stark,* 337; 5 *Tr. Rep.* 371, *Gross* vs. *Stacker;* 1 *P. W.* 289, *Cunriffe* vs. *Sifton;* 2 *East,* 183; *Strange,* 34.

It is apparent that a paper offered by the plaintiff in evidence and which purported to be a copy of a bill of sale from Thomas Phillips to John Phillips and wife, was clearly inadmissible as evidence. Should this court regard it as a private instrument between the parties, still the loss or destruction of the original is not satisfactorily accounted for upon any principle of evidence, or rule of action. It does not appear that the subscribing witness ever compared or examined the supposed copy with the original, nor did he pretend to say that he knew it to be an exact or sworn copy. All he states is, that he believes the contents of the two instruments are substantially the same, but he has not seen the original for many years. He is the only subscribing witness, as appears from the copy, and his testimony constituted all the proof that was taken as to the execution, or contents of the original bill of sale.

Again: Is the bill of sale of such a nature as is authorized or required by law to be recorded, in order to give validity and effect to the instrument, and to make it a part of the public documents, or records of the country? We are clearly of opinion that it is not. And such being the case, the supposed copy was inadmissible to prove the existence of the original, or its execution. As the instrument was not legally authorized to be recorded, the record itself would have been insufficient to establish that fact; and, therefore, much less can a supposed copy of a copy be allowed as competent evidence for the same purpose. 1 *Stark,* 154; 156 *Bac. A. & T.* 333, *A.* 8; 1*st Mod.* 117; *Stark.* 225; *Gilb,* 89; 5 *Mass.* 547.

It is a universal rule of practice, that a party will never be permitted to resort to secondary or inferior evidence, while it is in his power to adduce a higher grade, or more conclusive testimony. The best attainable evidence shall be adduced to prove every disputed fact.—— 1 *Stark.* 389. This rule of evidence is founded upon a supposition of fraud, and its operation is every way highly salutary and important,

LITTLE
ROCK,
July, 1838.
BROWN
vs.
HICKS.

and it applies with peculiar force to the proof adduced in support of both bills of sale. 1 *Stark.* 380. If a deed be lost, a copy is not evidence, if the deed itself be in existence or attainable. The subscribing witness that proves the bill of sale, or the supposed copy of a bill of sale from Thomas Phillips to John Phillips, is clearly incompetent, and ought not to have been permitted to give testimony in the cause. It is admitted that the witness, Samuel Phillips, is the son of the plaintiff's intestate, and that he is the legal distributee of the estate.

The plaintiff endeavored to restore his competency by swearing him upon his *voir dire,* and proving that he had received from, and receipted to the administrator for his portion of the estate. The receipt was not produced in court, nor was its non-production attempted to be accounted for in a legal manner. That the witness had a direct, certain, and vested interest in the event of the suit, cannot be denied, and that his interest was never relinquished or released, is equally evident. Where a witness, under a mistaken belief, supposed he had released all demands and claims against the estate; but upon his own showing it appeared that he was, nevertheless, clearly entitled to his distributive share, he is still held to be incompetent.

This suit is instituted for the recovery of assets, and consequently the witness is legally interested in its event, and wholly incompetent. 1 *Stark.* 125, *Matthews* vs. *Smith;* 2 *Y. & S.* 426; 2 *Dall.* 124; *Strange,* 829.

If the view the court has taken of this subject be correct, and that it is they do not doubt, it follows as a necessary consequence, that all the material evidence relied on by the plaintiff to support his cause of action, was illegal and incompetent, and had it been excluded from the jury, as it ought to have been, a verdict of course must have been rendered in favor of the defendant. The admission by the court of improper or illegal testimony, is a good cause for a new trial. The Circuit Court, therefore, erred in not awarding a new trial in the case.

The opinion of the court below upon all the points reserved on the trial, must be reversed, the judgment set aside with costs, the cause remanded to be proceeded in agreeably to the decision of this court, a new trial awarded, and leave granted to the parties, to amend the pleadings, if asked for or desired.