NATHANIEL WALKER *versus* THE PROTECTION INS. Co.

HIRAM JORDAN *versus* SAME.

HIRAM JORDAN *versus* THE WARREN INS. Co.

*It seems*, that in cases relative to the impracticability of saving a vessel, which has been wrecked at sea, the probable expense of repairs if she could have been saved, and the course to be pursued in making them, the opinions of experienced masters of vessels are admissible in evidence.

In a contract of insurance upon time, the time is to be reckoned, according to the longitude of the place where the contract was made, and is to be performed.

If, by reason of the violence of the winds and waves, a vessel upon the high seas has become a wreck, incapable of being brought into port, she is to be considered an *actual* total loss.

THESE three suits were upon policies of insurance, effected

upon the barque Elizabeth. The policies were effected on December 17, 1845, for one year, commencing and ending at 12 o'clock at noon.

At the trial, before SHEPLEY, C. J., it was admitted that the plaintiffs were owners of the parts of the vessel on which they had procured insurance ; that the preliminary notices were duly given and that offers of abandonment were made on January 8, 1847, and not accepted.

The cases were all by consent put to the jury together.

It appeared that the vessel was wrecked on the 17th of December, 1846, between four and five hundred miles from Bermuda, in the forenoon of that day, and that the master and crew remained upon the wreck a day or two, before they were taken off and the wreck abandoned. In the deposition of the master, who had had a long experience, the opinion was given that the vessel could not have been saved. And there was other testimony introduced by the plaintiffs, of experienced shipmasters, as to the expense of repairing vessels thus damaged in the West India islands, all which testimony was objected to, but admitted by the Court.

There was much other testimony, but without reciting it, the case may be understood by the opinion delivered. The plaintiffs claimed to recover for a total loss, contending that the proof established both a *constructive* and an *actual* total loss. The defendants insisted that they could be held at most only for a *partial* loss, and that to determine the amount of it, a *general average* should be taken into consideration.

Instructions were given in relation to all these matters, and the jury were requested to be ready on their return into Court to state, if they found for the plaintiffs, whether they found their verdicts upon an *actual* or *constructive* total loss, or upon a *partial* loss. They found verdicts for the plaintiffs, and also stated therein, that they found an *actual* total loss. The instructions upon the claim for an *actual* total loss were, that the policies being executed and to be performed in Portland, the risk would not expire until the expiration of the year, the time being reckoned according as it would be 12 o'clock at noon, at Portland, on Dec. 17, 1846.

That a vessel on the high seas might be considered as *an actual total loss* if she were found, by reason of the violence of the winds and waves, to have become a wreck, incapable of being saved and brought into port. Yet, however great might have been her injury, so long as it continued to be doubtful whether she might or might not be brought into a port, there would be no *actual* total loss. The mere fact that the master and crew might remain upon the wreck, would not prevent the loss from being considered total, if the vessel were incapable of being brought into any port. Nor would the mere fact that the vessel continued, as such a vessel, to float upon the seas, prevent the loss from being considered total, if she could not be brought into any port.

If these rulings and instructions were erroneous, the verdicts were to be set aside, and new trials granted.

*Fessenden*, *Deblois* and *Fessenden*, for defendants, contended that the policy being for one year, the rule of law is, and the jury should have been so instructed, that the insurers are answerable only for those consequences of the loss which take place before the termination of the risk ; and that inasmuch as the "Elizabeth" was still a vessel and sailing at said termination of the risk, the defendants were liable only for such injuries as she had received during the risk, though she might have been lost, after the termination of the time mentioned in said policy, from injuries received during the term for which she was so insured. Phillips on Ins. 708, 709, 710 ; *Lockyer* v. *Affley*, 1 T. R. 252 ; Marsh. on Ins. 174 ; *Amer. Ins. Co.* v. *Hutton*, 24 Wend. 330 ; *Howell* v. *Cincin. Ins. Co.*, 7 Ham. 284 ; *Eyre* v. *Marine Ins. Co.*, 6 Wheat. 247 ; *Coit* v. *Smith*, 3 Johns. Cases, 16.

That the Judge erred in allowing the opinions of the witnesses objected to, to go to the jury. 1 Phil. Ev. 227 ; *Dickinson* v. *Barber*, 9 Mass. 227 ; Greenl. on Ev. 490 ; *Hathorn* v. *King*, 8 Mass. 371.

*W. P. Fessenden*, for plaintiffs, as to the last point raised by defendants, relied upon Greenl. Ev. 1, $\S$ 440. That the in-

structions were correct, he cited Phillips on Ins. 1, 708—712; 2, *ibid*, 230—240 ; 6 Mass. 482.

The opinion of the Court, (HOWARD J. concurring only in the result,) was delivered by

WELLS, J. — These actions were upon policies of insurance, effected upon the barque Elizabeth, on the seventeenth of December, 1845, for one year, commencing and ending, at twelve of the clock, at noon. The preliminary notices were duly given, and offers of abandonment were made, on the eighth of January, 1847.

1. The opinion of master mariners, relative to the impracticability of saving the vessel, the probable expense of repairs, *if she could have been taken to some port in the West Indies,* and the course to be pursued, in making them, was admitted in evidence. As the jury have found a total loss, the two last named branches of testimony become immaterial:

On questions of skill, science or trade, or others of the like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. A shipbuilder may give his opinion as to the seaworthiness of a ship, even on facts stated by others. So of nautical men as to navigating a ship. 1 Greenl. on Evi. § 4, 40 ; *Beckwith* v. *Sydebotham,* 1 Camp. 117 ; *Malton* v. *Nesbit,* 1 C. & P. 70.

The opinions of experienced masters of vessels fall within the same principle. *Cuique in sua arte, credendum est.* The reasons for their opinions may be required, and the jury will be able to decide upon their correctness. The testimony was properly received.

2. The jury were instructed, that the risk would not expire, until the expiration of the year, the time being reckoned, according as it would be 12 o'clock, at noon, at Portland, on Dec.17, 1846. The vessel having been lost, on the day when the policies expired, and as the defendants contended, after noon, at the place where she then was, this instruction was material.

The contract of insurance was for a year, and if the time of noon should be taken, at a place, east or west longitude of Portland, on the day when the risk expired, the period of time would be lessened or extended, and might be less or more than a year. Such a construction would be in violation of the contract. The parties must be considered, as regarding the meridian of the place, where the contract is made, unless some other one is mentioned in it.

3. The jury were instructed, " that a vessel, on the high seas, might be considered as totally lost, if she were found by reason of the violence of the. winds and waves, to have become a wreck, incapable of being saved and brought into port. Yet however great might have been her injuries, so long as it continued to be doubtful, whether she might or might not be brought into a port, there would be no actual total loss. The mere fact, that the master and crew might remain upon the wreck, would not prevent the loss from being considered total, if the vessel were incapable of being brought into any port. Nor would the mere fact, that the vessel continued as such a vessel, to float upon the seas, prevent the loss from being considered total, if she could not be brought into any port."

It is unnecessary to consider, whether the jury might not have been well warranted, by the facts, in finding a total *constructive* loss. For as they have specially found an actual total loss, the correctness of the instructions must be tested, by such finding.

This is not a case, where an injury happens before the time specified in the policy, and a loss after the time, resulting from that injury. But the jury must have found, under the instruction, that the loss happened before the time, for which the vessel was insured, had elapsed.

Where there is a destruction of the property insured, so that nothing remains, which would be valuable upon abandonment to the insurers, it is an actual total loss. And in such case, no abandonment is necessary, for the obvious reason, that there is nothing to abandon. But if any part of the property survives the peril, as in case of a shipwreck, without a total

destruction of the thing insured, or if any rights or claims remain to the insured, as owner of the property, it is a case of technical or constructive .total loss, and an abandonment is necessary, for it is just, that the insured should transfer to the underwriters the remains of the property, or the rights accruing to him as owner, upon his receiving of them the amount insured. 2 Phil. on Ins. 230, 231.

According to the instructions, the jury must have found, that the vessel became a wreck, *incapable of being saved and brought into port.* The instructions imply that the jury must find the wreck to be incapable of being brought into port *by any human agency,* and that it must be a case beyond all doubt in that respect, to constitute an actual total loss. If there were a doubt, that the wreck could be saved or brought into port, they were not at liberty to determine it to be an actual total loss. There then could be nothing, of which the underwriters might avail themselves upon an abandonment, and such an act would be useless.

If a vessel is sunk in the ocean, so deep that no human agency can raise her, she is lost to all beneficial purposes, although she may remain in *rerum natura.* Her existence is valueless, and no benefit could accrue to the underwriters upon an abandonment.

It may be said, that if the wreck could float, it might have been found and brought into port, and after the payment of salvage, the underwriters would be entitled to what might remain. The jury have not found any such state of facts, but on the contrary, that the wreck was incapable of being brought into port. Whether the verdict, for an actual total loss, could be sustained by the evidence, is not now the question presented, but whether the instructions were correct. If the finding of the jury, upon the point on which the verdict was rendered, should be considered questionable, still they might have found, with the most perfect propriety, a constructive total loss, and as an abandonment was in fact made, there could have been no just ground of objection to such conclusion.

But the instructions, upon a careful examination of them,

will be found, we believe, to be correct, and not introduc-
ing any new doctrine as to what constitutes an actual total loss.
Judgment on the verdict.