FREEMAN & al. *versus* THAYER.

A levy of land, to which the execution debtor, at the time of the levy, had no title, gives to the creditor, no rights in the land, although the debtor *after* the levy, should acquire a title.

The statute of 1844, c. 123, sect. 16, prescribing what evidence shall be sufficient to sustain a town-collector's sale of land for payment of taxes, is applicable to sales, made *previously*, as well as to sales made *subsequently* to that statute.

When the book of original assessments is lost, a proved copy, as secondary evidence, may be used.

Though on a trial involving the validity of such a sale, a part only of the requisite proofs be positive and direct, yet, if the suit be brought more than thirty years after the sale, the jury are at *liberty* to presume that the tax was duly authorized and assessed, and that all the other proceedings requisite to the validity of the sale, were properly had.

ON Exceptions from the Nov. Term, 1850, SHEPLEY, C. J., presiding.

Trespass for a quantity of saw-logs, which had been cut in the forest by one Chesley in 1847 and 1848. The act of the defendant, relied upon to support this action, is that he, being a deputy sheriff, attached the logs as the property of Chesley.

The ownership of the logs was in question, and it became necessary to inquire to whom belonged the lot of land, from which they were cut.

In 1816, the lot was sold at public auction and conveyed to Daniel Jackson, by Tilson Waterman, as collector of the town, for the non-payment of taxes assessed in 1813.

One Grosvenor, in 1836, levied and set off the land to himself upon an execution against Chesley. After this levy, viz, in 1840, Jackson conveyed the land to Chesley and, in 1842, Grosvenor by deed of general warranty conveyed it to the plaintiffs.

The grounds, upon which the plaintiffs proceed are 1st, that by the levy of Grosvenor in 1836, and the conveyance by him in 1842, to the plaintiffs, they became vested of a legal sezin, sufficient to maintain a writ of entry against Chesley, or to maintain trespass for the timber cut by him ; and 2dly, that the collector's deed of 1816, conveyed no title to Jackson, and, that therefore, Jackson's deed, made in 1840, to Chesley was without effect.

The plaintiffs proved some occasional occupations of the lot by Chesley prior to 1836, but these occupations were not of such continuous character as, of themselves, to create a title against the proprietor. They therefore became unimportant as to this trial.

The defendant contended, *that* at the time of Grosvenor's levy in 1836, the title was in Jackson ; *that* the levy was therefore inoperative ; *that* Chesley acquired a title and sezin by Jackson's deed in 1840, and *that* such title and sezin are now in Chesley, not being invalidated or impaired by a levy made several years previously, and at a time when the execution debtor had no rights in the land.

The statute of 1844, chap. 123, sect. 16, provides ; that, " In any trial at law or equity, involving the validity of any sale of real estate for the non-payment of taxes, it shall be sufficient for the party claiming under it, to produce in evidence the collector's deed, duly executed and recorded ; the assessments signed by the assessors, and their warrants to the collector ; and to prove that such collector complied with the requisitions of law as to advertising and selling such real estate."

The defendant proposed to introduce and rely upon the proofs, pointed out in that section of the statute. To this course the plaintiffs objected, insisting that the sale could be supported only by such proofs as the law required at the time of the sale.

The objection was overruled.

The defendant then introduced the collector's deed, made in 1816, acknowledged in 1845, and recorded in 1848. He then introduced proof to the court, that the assessment, signed by the assessors was lost, and offered a paper, proposing to prove it was a copy. The plaintiffs objected to the proof and to the paper. But the proof was admitted, and the paper was read to the jury. The defendant then proved by positive testimony that some of the notifications, required by law to be given by the collector, were duly posted up; but he failed to prove by direct and positive testimony that the other requisite notifications were given. The deficiencies in that respect, are sufficiently indicated by the requests made to the Judge for instructions to the jury.

The jury were instructed *that* the title to the land became important only as proof of ownership of the logs cut upon it; *that* the title exhibited by the plaintiffs would be sufficient to enable them to maintain an action of trespess against a stranger to the title for an entry upon the land, and would therefore be sufficient to enable them to maintain an action of trespass against such a person to recover the value of the logs; *that* their right to maintain the present action would depend upon the question, whether the defendant had proved that Chesley had an elder and better title to the land than the title exhibited by the plaintiffs; *that* there did not appear to have been such an occupation or possession by either of the parties, or those under whom they held, as to enable them thereby to obtain a title; *that* neither party appeared to have been an original proprietor or owner of the land or to have obtained title by any conveyance from such owner or proprietor; *that* the title presented by the defendant depended upon the assessment and sale of the land for neglect to pay the taxes assessed; *that*

Freeman *v.* Thayer.

the law required only that the defendant should exhibit the assessment and prove that the proceedings, by which the sale was made, were regular and legal, *that* the defendant did not exhibit an assessment, but exhibited only what was alleged to be a copy of it, as committed to the collector — and testimony to prove the loss of the original assessment ; *that* if satisfied that the assessment was irrecoverably lost, and that the paper committed to the collector was a copy of it, that should have the same effect as the assessment ; *that* if they came to that conclusion, they should proceed to consider, whether the subsequent proceedings were all legal and regular ; *that* the testimony did not positively prove that there had been a perfect compliance with the requirements of the law — it did not show that all the advertisements had continued posted the number of days required, or that it had been published three weeks successively in the paper required by law, in which the publication should be made ; *that* there might be found other defects ; *that* the proceedings having taken place more than thirty years ago, if they were satisfied from the testimony, that there was a strong probability that all the other acts required by the law had been performed, they would be authorized to presume, after such a lapse of time, that all the proceedings had been regularly and legally conducted ; but *that* they were not required to make any such inference or presumption, — it was a matter submitted to their consideration and judgment whether, under all the circumstances, they ought to come to such a conclusion ; *that* if they came to the conclusion that the assessment was lost and that the document committed to the collector was a true copy of it, and that the proceedings to make the sale were all regular and legal, the deed from the collector to Jackson would be effectual to convey the land, otherwise not; *that* if they found the conveyance from the collector to Jackson became effectual, and that the deed from Jackson had been regularly executed and delivered, the defendant would be entitled to their verdict, otherwise their verdict should be in favor of the plaintiffs.    The jury found a verdict for the defendant.

The Judge was requested by the plaintiffs to give the following instructions to the jury: —

1. That the validity of the deed from the collector to Jackson must be determined according to the provisions of law, as they existed at the time the land was advertised and sold, and when the deed was given.

2. That in order to maintain title to the lot under the tax deed, the defendant must prove the granting of money by the State, county and town, the legal assessment of the taxes and the fulfilment of all the requisitions of the law in as full a manner, as they would have been obliged to do under the law as it existed at the time the sale and deed were made.

3. That although delinquent highway taxes were inserted in the bills committed to said collector, if said taxes were ever legally assessed they formed a part of the assessment of the highway tax in 1812, and not a part of the assessment of money tax in 1813.

4. That, inasmuch as the records of the town were in court and used in the case, it was necessary for the defendant to show that a highway tax was raised and assessed in 1812, and the collector's sale was illegal, because no such evidence was shown.

5. That said sale is void and illegal, because no proof was introduced, that the town chose any assessors in 1812.

6. That the sale is void and illegal, because there was no proof introduced, that there was any valuation taken by any assessors for the town in 1812.

7. That the sale is void and illegal, because there is no proof introduced, to show that an assessor's office was kept in Poland in 1812, and no proof that the assessors, if there were any in that year, ever caused attested copies of the assessment of the highway tax and valuation for the year 1812, if any such assessment or valuation existed, to be lodged in the town clerk's office. That the sale for the delinquent highway tax is void, because there is no evidence that the same was ever committed to a surveyor of the year 1812, to be collected in labor on the highway.

8. That the sale for the delinquent highway tax was illegal, because there is no evidence that the same was not paid in money or labor to the collector of taxes, or a surveyor of highways for the year 1812.

9. That the sale for the State and County tax is void, because it is not shown what sums were granted, nor whether any sums were ever granted for State and County purposes in 1813.

10. That the assessment of the town tax was illegal and the sale void, because it appears by the records of the town produced, that the town in that year raised only $375 ; and the delinquent highway tax, as appears by the collector's bills, produced, was only $25,95 ; and the amount of the bills committed to the alleged collector to collect was $479,23, as shown by the bills produced by the collector.

11. That if the jury should be satisfied that the plaintiffs have proved by the records of the town, and the bills produced in the case, that the assessors overlaid the tax of 1813 more than five per cent. beyond the amount raised by the town, and the delinquent highway tax of the preceding year, the assessment was illegal and the sale void.

12. That if the jury should be satisfied that the plaintiffs have proved that the assessors of 1813 did not keep any office, and that they did not cause attested copies of the assessment and valuations to be lodged in the town clerk's office, the tax and sale were illegal.

13. That the sale for the delinquent highway tax was illegal, because said tax being against a non-resident, ought to have been inserted in the collector's bills for 1812, and the land sold by the collector of that year.

14. That the records of the vote of the town produced, showed that no person was legally chosen and sworn as collector in 1813.

15. That although Tillson Waterman was chosen as constable, yet he was not a collector of taxes.

16. That as the warrants were directed to Tillson Water-

man as collector of taxes, as the commitments were made to him as collector of taxes, as the advertisements produced, and the notifications produced, and the deed to the purchaser, show that he undertook to act as a collector of taxes, the deed cannot operate as a constable's deed, and the sale was void.

These requested instructions the Judge refused to give, except so far as they are covered by the instructions already given.

To the instructions given and to the refusal to instruct, the plaintiffs excepted.

*Woodman,* for the plaintiffs.

*Shepley* and *Dana,* for the defendant.

HOWARD, J. — At the trial it became important to ascertain whether the logs in controversy were the property of the plaintiffs, or of Chesley. For that purpose, the title to the land on which the logs were cut became material. The plaintiffs claimed under Grosvenor, who levied upon the land, as the property of Chesley, in 1836, and conveyed to them in 1842. The defendant contended that Chesley had no title to the premises until they were conveyed to him by Jackson, in 1840. Jackson claimed under a deed from Tillson Waterman, as collector of taxes in Poland, in 1813, given in pursuance of a sale for taxes, March 19, 1816. This deed bore date April 1, 1816, was acknowledged March 21, 1845, and recorded December 13, 1848.

It is provided by the statute of 1844, ch. 123, sec. 16, that, " In any trial at law or in equity, involving the validity of any sale of real estate for non-payment of taxes, it shall be sufficient for the party claiming under it, to produce in evidence the collector's deed duly executed and recorded ; the assessments signed by the assessors, and their warrants to the collector ; and to prove that such collector complied with the requisitions of law, as to advertising and selling such real estate."

The defendant assumed that this statute furnished a rule of evidence for him, in presenting and sustaining the title de-

rived from the sale for taxes ; and the presiding Judge concurring in this view, directed the trial accordingly.

The provisions of the section quoted are general, and intended, by express terms, to apply to any trial, of the description named, in law or equity, that might transpire. They may furnish a rule of evidence for subsequent proceedings in court, to establish titles to real estate dependent upon sales for non-payment of taxes ; but they do not impair the obligation of contracts or disturb vested rights, when applied to cases involving the validity of prior sales. There never was imposed upon the defendant, an obligation to prove the title under which he claims, in a particular mode ; nor had those contesting that title a vested right to require that it should be supported by a particular kind or amount of evidence. The legislature had the power, and the right to prescribe the evidence to be received, and the effect of that evidence, in proceedings in our courts. They may prescribe and change remedies, and such regulations would not necessarily affect the obligation of contracts. It has been well said, that there is no such thing as a vested right to a particular remedy. There can be no such thing as a vested right in one to compel another to pursue a particular remedy, or to take a given line of defence, in any case. *Potter* v. *Sturdivant,* 4 Greenl. 154; *Thayer* v. *Sevey,* 2 Fairf. 284; *Oriental Bank* v. *Freeze,* 6 Shepley, 109 ; *Morse* v. *Rice,* 8 Shepley, 53 ; *The People* v. *Livingston,* 6 Wend. 526 ; *Ogden* v. *Saunders,* 12 Wheat. 213, 349.

The argument for the plaintiffs assumes that, as the title of Chesley depended on the validity of the sale for taxes, it was originally defective, and that, but for the statute of 1844, referred to, the defendant could never have asserted, successfully a title in Chesley. It disregards the consideration that the trial proceeded upon the evidence then furnished, and not evidence which might have been produced at a prior date. If this question of title had arisen before the expiration of twenty years from its origin, evidence might perhaps, have been introduced, which time and accident may have rendered inaccessi-

ble. Then the facts, unaided by presumptions of fact, might have constituted the evidence to sustain the title originating in the collector's sale.

It has been determined that, after the lapse of thirty years from a collector's sale of land for taxes, it may be presumed from facts and circumstances proved, that the tax-bills, valuation, warrants, notices, &c., were regular ; that the assessors and collector were duly chosen at legal meetings ; that the collector was sworn ; that a valuation and copy of the assessment were returned by the assessors to the town clerk, and that every thing which can be thus reasonably and fairly presumed, may have the force and effect of proof. *Gray* v. *Gardner,* 3 Mass. 402 ; *Knox* v. *Jenks,* 7 Mass. 492 ; *Colman* v. *Anderson,* 10 Mass. 105 ; *Pejepscot Proprietors* v. *Ransom,* 14 Mass. 147 ; *Blossom* v. *Cannon,* 14 Mass. 178 ; *Battles* v. *Holley,* 6 Greenl. 145 ; *Soc. for Propagating the Gospel* v. *Young,* 2 N. H. 310 ; *Bergen* v. *Bennett,* 1 Cain. Cas. Err. 18 ; *The case of Corporations,* 4 Coke, 78 ; *Rex* v. *Long Buckby,* 7 East, 45 ; *Read* v. *Goodyear,* 17 Serg. & Rawle, 350 ; 3 Sugden, V. & P. 16—43, 6th Amer. from 10th Lond. edition.

In the opinion of the Court, the presiding Judge gave appropriate directions to the jury, and did not err in refusing to give the instructions proposed, except so far as they were embraced in the instructions given. Whether the jury made inferences and presumptions which they were not authorized to do, from the facts and circumstances proved, is not a question presented by the exceptions.

*Exceptions overruled, judgment on the verdict.*