## PITTSFIELD *v.* BARNSTEAD.

Under the act of 1796, if an alleged pauper resided in the town sought to be charged, was taxed for his poll for the term of seven years, and paid all taxes legally assessed on his poll and estate during that term, he gained a settlement there.

By the act of 1791, selectmen were required to make assessments of taxes, and to record them in their book, which was to be the property of the town, and open to any of the inhabitants of the town.—*Held*, that the

Pittsfield *v.* Barnstead.

selectmen's book, containing the assessment of taxes, in proper form, furnishes competent *primâ facie* evidence of the fact of the due assessment of resident taxes.

The invoice and assessment of taxes, or copies of them, especially of the resident taxes, are not required to be filed in the town-clerk's office before the committal of the lists to the collectors of taxes; and even if such deposits were essential, where the transaction was an ancient one, the jury might reasonably presume a compliance with the law, or the former existence, and the loss of the record; and if more than twenty years had elapsed since the taxation, the jury might properly presume the taxes paid; and upon such a state of facts a motion for a nonsuit was properly overruled.

To rebut the evidence of an alleged pauper's poverty and inability to pay taxes, it is competent to show that he had money and other property sufficient to discharge them during the time in question.

The fact that the son of an alleged pauper, having no settlement, except by derivation from his father, was supported by the town sought to be charged, is competent evidence against the town, because it is in the nature of an admission.

Upon the production of mutilated books, it is proper for the jury to consider their appearance, and among other things, any evidence they present of a fraudulent alteration.

Where alleged causes of exception to a juror appear from the venire and return, and the juror sits in the case without objection, it is too late to make objection for such reasons, after verdict.

ASSUMPSIT, for the support of Sally Willey, Enoch H. Willey, and James Willey and wife. The plaintiffs offered evidence tending to show. that at the time specified, said Willeys were poor and needed relief; that they then resided in Pittsfield, and made application to said town for relief; that relief was furnished them, and the defendant town duly notified, and that these paupers had no relations liable by law for their support. It was proved that said Enoch H. and James Willey were sons of said Sally Willey, by one Theodore Willey, her late husband, who died in said Barnstead in 1834, and that said Enoch H. and James had never gained any settlement in their own right, and it was contended by the plaintiffs that these paupers were chargeable upon the defendant town, upon

the ground that Theodore Willey gained a settlement in Barnstead subsequent to 1796, by being taxed seven years in succession for his poll, and paying all taxes legally assessed upon him and his estate for said term; and it was admitted that the paupers had no settlement in any town in this State, unless one had been gained in that way by said Theodore Willey in said Barnstead. It was admitted that there were no records of any invoice or assessment of taxes recorded upon the town-clerk's records of said Barnstead, till subsequent to 1820, and in the absence of any and all such records with the town-clerk, the plaintiffs offered the selectmen's books of Barnstead, as tending to show that said Theodore Willey was taxed in said Barnstead prior to 1820; to which evidence the defendants objected, but the court admitted it. Upon said selectmen's books there were records of what purported to be an invoice and assessment of taxes upon the inhabitants of Barnstead, for each year, from 1803 to 1819 inclusive, and the name of Theodore Willey appeared as having been taxed in each of these years, except the year 1805 and 1806. One year he was taxed only for his poll (1815); the other years he was taxed for his poll and a cow, and generally one horse, and sometimes two, and sometimes for two or three cows, and sometimes for two or three young cattle. The taxes appear on said books, some years divided and set in different columns, which columns are headed " State," " county," " town and school." Some other years the taxes are carried out together in one gross sum, but the said Willey's are carried out in the same way that those of the other persons are whose names are contained in the invoice and assessment, each and every year. In the record of the invoice and assessment for the years 1805 and 1806, portions of the records were missing, several leaves of the book, including the letter W. and some other letters of the alphabet, were missing from the book. The plaintiffs here rested their case, and the defend-

ants moved for a nonsuit, which motion the court over-
ruled.   The defendants then introduced evidence tending
to show that the taxes of said Theodore Willey were
abated in the years 1812, 1814, 1816, 1817 and 1818; and
also evidence tending to show that a certain abatement or
allowance was made to the collectors of Barnstead for the
years 1808 and 1809, in consequence of the inability of
certain poor people in town to pay their taxes, but it did
not particularize by name or otherwise who these poor
people were.   The defendants also offered evidence tend-
ing to prove that said Theodore Willey was, during all
this time, a poor man, and destitute of money or means
to pay any debts or taxes.   The plaintiffs then introduced
evidence of said Willey's having raised large crops of
corn and potatoes in several of these years, and that he
was never known to refuse to pay his debts or taxes, when
called upon to do so.   The plaintiffs also offered evidence
to show that said Theodore, about the year 1813 or 1814,
paid out a sum of money between $80 and $100, on
account of his son Enoch, at the Fort; to which the de-
fendants objected, but the court admitted it.   The plain-
tiffs introduced the deposition of Nancy Elliot, a daughter
of Theodore Willey, and upon the cross-examination the
defendants asked her the three following questions, which,
with the answers, were objected to by the plaintiffs and
excluded by the court, to wit:

"*Int.* 37.  Do you recollect when your father was in jail
at Dover?   *Ans.* I never saw him in jail; they said he
was in jail.

*Int.* 38.  About how old should you think you were
when you understood that your father was in jail?   *Ans.*
I was about 18 or 19.

*Int.* 39.  How many times did you ever understand your
father to have been in jail?   *Ans.* I did not know I was
obliged to tell every thing my father did.   I understood
he was in jail twice."

The plaintiffs introduced evidence that the town of Barnstead had supported Chandler Willey, a son of said Theodore, and also offered evidence tending to show that said Chandler had never gained any settlement there in his own right; to all which the defendants objected, but the court admitted it, instructing the jury that if they found, from all the evidence before them on that point, that said Chandler had never gained any settlement in said Barnstead in his own right, then they might consider the fact of said town having supported him in the nature of an admission on the part of Barnstead of their liability to support said Theodore, and might give it such consideration, as, under the circumstances, it deserved. One John S. Rollins was introduced as a witness by the plaintiffs, who testified that in 1848 he was selectman and overseer of the poor in Loudon, and that one of the Willey family was supported at that time by said Loudon, and that he claimed to recover for his support, of Barnstead, upon the ground of the settlement there of said Theodore Willey; that he applied to one J. B. Merrill, then one of the selectmen of Barnstead, in relation to it, and examined the records of Barnstead, in relation to the settlement of said Theodore Willey, stating the condition in which he found them. On cross-examination he was asked by the defendants' counsel whether any suit was brought by Loudon against Barnstead, upon that claim, and his reply was that none was brought. After the close of the cross-examination, the plaintiffs' counsel asked the witness why a suit was not brought upon the claim, and his answer was that after examining the records, he saw said Merrill at muster that year, and told him he should bring a suit against Barnstead if the bill was not paid, and Merrill agreed with the witness that either he, Merrill, or one Walker, who was overseer of the poor of Barnstead that year, would come and settle the bill within two weeks, and this was the reason that no

suit was commenced; that the witness waited the two weeks, but they did not come near, and then the ninety days had expired, so that the witness could not notify the town of Barnstead. No claim was made before the jury that the agreement was binding upon the defendant town, it being offered simply as explanatory of the fact drawn out on cross-examination, that no suit was brought by Loudon against Barnstead at that time. To so much of the above statement of this witness as relates to the agreement of Merrill that he or Walker would settle the bill, the defendants objected, but the court admitted it.

The plaintiffs claimed and asked the jury to find that Theodore Willey had been taxed in the years 1805 and 1806, in Barnstead, and that the selectmen's book, which had been introduced, originally showed that fact, but that the book had been altered and mutilated, for the purpose of concealing this evidence, by some person or persons in the defendants' interest. One of the plaintiffs' witnesses testified that he had occasion to examine, and did examine this book in August of the year 1848, with reference to said Willey's settlement, and that he there found, as appeared by the book, that said Willey was taxed in the years 1803, 1804 and 1805; that one leaf was then gone in the invoice of 1806, which leaf contained the Ws; that he examined the book particularly, to see if there was any other leaf missing in the assessments, and found only that one missing; that he found all the names there in the year 1806 but the Ws; that all the other leaves were then perfect. Another witness testified that he had occasion to examine the records of Barnstead, and did examine them in September, 1848; that he then saw this same selectmen's book, and found two leaves missing, one in the invoice of 1805, and the other in that of 1806, each leaf containing the Ws of each year; that one of the leaves had the appearance of having been cut out; that the witness could see the part of the leaf left in, and

where a knife had apparently cut it off. The witness noticed no other leaves then missing, and the other half of the sheets from which these leaves had been taken were then in the book. There was other evidence of the same import, and much contradictory testimony. At the time of the trial there were quite a number of leaves gone from the book, and many others were loose, and the attention of the jury was called to the appearance of several of the loose leaves, as tending to show that others had been cut off from them with some sharp instrument. The court instructed the jury that they might consider all the evidence on this point, and find whether the book originally showed that said Theodore Willey was taxed there in the years 1805 and 1806, the same as the other years from 1803 to 1810 (that being as far as this book extended); and if so, they might treat them as the other years in which it appeared by the book that he was taxed. But if they found otherwise than that, there was no competent evidence further to consider, tending to show that said Willey was taxed in those years, and they might be laid out of the case. The plaintiffs also offered in evidence, as tending to show that this book had been altered or mutilated by the defendants, or some one in the defendants' interest, an entry of the abatement of the taxes of one Samuel Twombly, for a certain year, which entry, as the plaintiffs claimed, showed, upon the face of it, evidence of having been interlined at some recent date; to which the defendants objected, but the court admitted it.

The defendants desired the court to instruct the jury that no presumption of payment of any tax could in this case be made after any lapse of time, because the plaintiffs had not proved any tax legally assessed; which the court declined to do, but did instruct the jury that if they should find that Theodore Willey was taxed for his poll seven years in succession, between the years 1803 and 1819 inclusive, and the taxes for none of those years were

abated, then the legal presumption would be, in the absence of all other testimony on that subject, that the taxes were paid; but as there had been evidence introduced by both parties bearing upon the subject of payment, they might find the fact upon the preponderance of the evidence; to which instructions, so far as the presumption of payment is concerned, the defendants excepted, as also to all the other rulings of the court, as above stated.

The jury returned a verdict for the plaintiffs, which the defendants moved the court to set aside for supposed error in the rulings and instructions of the court, and also for the additional reason that the jurors upon the panel from the town of Gilmanton were not legally and duly appointed. No objection was made to these jurors until after the verdict.

*Bellows, Whipple* and *Butters,* for the defendants.

1. The motion for a nonsuit should have prevailed, because the plaintiffs failed to prove, by competent evidence, that Theodore Willey was assessed and paid taxes for any seven successive years. The selectmen's books were used as secondary evidence in the absence of the town clerk's records, which would have been the primary evidence. Oral evidence cannot be substituted for any instrument which the law requires to be in writing; no other proof can be substituted for that, so long as the writing exists, and is in the power of the party. Even the admission of the fact, by a party, does not supersede direct proof of matter of record. 1 Gr. Ev. 98. It has been held, where town records have been burnt, mutilated, or otherwise destroyed, parol evidence may be let in to supply the defect. *Stockbridge* v. *West Stockbridge,* 12 Mass. 400; *Thayer* v. *Stearns,* 1 Pick. 109. Whether the loss is sufficiently proved to let in secondary evidence is a question for the court. *Donelson* v. *Taylor,* 8 Pick. 390; *Page*

Pittsfield *v.* Barnstead.

v. *Page*, 15 Pick. 368; *Woods* v. *Gassett*, 11 N. H. 442. This case finds it was admitted that there were no records of invoices on the town clerk's books prior to 1820. How could the court be satisfied of the loss of a thing which was not shown ever to have existed. This is one of the cases in which provision is made by the statute for the keeping of the documents, and for the allowance of inspection. Act of Febuary 8, 1791, 214; N. H. Laws, Ed. 1805; 2 Phill. on Ev. 182. The act of 1791 provides for a record of all invoices and assessments made by the selectmen in a book of record, " which book shall be the property of, and shall be open to any of the inhabitants of said town." It then goes on and provides that the assessments and invoices shall be recorded by the town-clerk in the book of records, " that the inhabitants or others rated may inspect the same." Documents may be of a general public nature, or of a local or limited public nature, and the right of inspection is correlative. 2 Phill. Ev. 183. See *King* v. *The Bishop of Ely*, 8 B. & C. 112, in which it is said that parish books are not kept for the use of strangers; *Rex* v. *Buckingham*, 8 B. & C. 379; *Mayor of Southampton* v. *Greaves*, 8 T. R. 590.

A corporation will not be compelled to produce, for the inspection of strangers, any books relating to their private transactions. 2 Phill on Ev. 184; *Shelling* v. *Farmer*, 1 Str. 646; *Murray* v. *Thornhill*, 2 Str. 717; Ang. & Am. on Corp. 681, 733; *Buzzell* v. *Nicholson*, 3 B. & Ad. 649. The books of a corporation are public with respect to its members, but private in regard to third persons. Gres. Eq. Ev. 116. In New-York there is no distinction made, it seems, between corporations and private persons in this respect. *Bank* v. *Hillard*, 6 Cow. 62; *Willis* v. *Bailey*, 19 Johns. 268. The record should have been shown to come out of the proper custody, or from the proper place of depositing it. *Adamthwaite* v. *Synge*, 1 Stark. 183.

Pittsfield *v.* Barnstead.

A deficiency in parish records is not to be supplied by parol testimony. *Manning* v. *Fifth Parish*, 6 Pick. 16 ; *Taylor* v. *Henry*, 2 Pick. 402. Proof that Theodore Willey was assessed a tax in 1803 and 1804, and in 1807 and succeeding years, even with further proof that he was of ability to pay a tax in 1805 and 1806, does not raise a presumption that he was actually assessed a tax in those years. Proof of payment of taxes in the preceding and succeeding years, with proof of ability to pay in 1805 and 1806, would not raise a legal presumption that he actually paid taxes in those years. Why can there be a stronger presumption in favor of the assessment of a tax which is purely a matter of record than of the simple fact of payment of it? *Robbins* v. *Townshend*, 20 Pick. 345. The Statute of 1791 made it the duty of the selectmen to have the invoices recorded on the town-clerk's books, or a certified copy left with him. It made their estates and bodies answerable, if they did not properly discharge their duties in the assessment of taxes. If these plaintiffs or any body else has suffered by the default of the selectmen to discharge their duty, their remedy is against them, and not against the town, which already may have had to suffer greater hardships on account of such default. It was doubted by the court whether defects in the record of the laying out of a highway by selectmen could be supplied by parol evidence. *Pritchard* v. *Atkinson*, 3 N. H. 335. The doings of selectmen, in laying out highways under the statute of 1792, should be reduced to writing and lodged with the town-clerk ; and parol evidence of the laying out of a road under that statute cannot be received until the loss of the writings be shown. *Greeley* v. *Quimby*, 22 N. H. 335 ; *Cass* v. *Bellows*, 31 N. H. 501. The proceedings of the court of probate can be proved only by its records, and parol evidence of an application for partition cannot be received. *Brown* v. *Sceggel*, 21 N. H. 121. The selectmen's books were not competent as cotemporary mem-

oranda. *Webster* v. *Clark*, 30 N. H. 245; *Watson* v. *Walker*, 23 N. H. 471.

2. The evidence with regard to Chandler Willey should not have been admitted. The plaintiffs were bound to produce the best evidence of which the case admitted. This they did not do. 2 Stark. Ev. 283; *Foye* v. *Leighton*, 24 N. H. 29; *Leyfield's Case*, 10 Coke 92; *Hoitt* v. *Moulton*, 21 N. H. 586; *Dunbar* v. *Marden*, 13 N. H. 311. The burden of proof was on the plaintiffs to show where his settlement was, and they could not shift that burden upon the defendants by *primâ facie* evidence. *Wilmington* v. *Burlington*, 4 Pick. 174. Selectmen cannot, by their mere acts or declarations, change the settlement of a pauper from one town to another, and confess away the rights of their town. *Jaffrey* v. *Cornish*, 10 N. H. 511. As to what will constitute proof of the loss or destruction of documents, see *Kimball* v. *Bellows*, 13 N. H. 58; *Curry* v. *Rogers*, 21 N. H. 252; *Furbush* v. *Goodwin*, 25 N. H. 425; *Currier* v. *Railroad*, 31 N. H. 209.

3. The cross interrogatories to Nancy Elliot should have been admitted. The latter part of the answer to Int. 37 may be objectionable, as hearsay. The first part of the answer was a full and pertinent answer to the question. The court should take heed that a witness who exhibits strong bias in the case, shall not be allowed wantonly to damage the effect of testimony. This objection cannot apply to Int. 38, or to Int. 39. It is not to be presumed that the witness knew the facts therein testified to from hearsay alone. Nor does what she says about her personal knowledge make any difference. She was a minor, and a member of her father's family, and may have known the facts testified to by her from the declarations made by her father at the time of the transaction—a part of the *res gestæ*—which could not be rejected as hearsay, and which the witness might not consider personal knowledge. If the source of her knowledge was hearsay, the

plaintiffs should have so made it appear on the direct examination, when resumed. If the witness could have known the facts from a competent source, we are not to presume that she knew them from an incompetent one. The declarations made at the time of the transaction, when Theodore Willey changed his actual residence, or was upon a journey, or left home, or returned thither, or remained abroad, if expressive of its character, motive, or object, are admissible, like any other material facts. 1 Gr. Ev. 120 ; *Mahurin* v. *Bellows*, 14 N. H. 212. The declarations of deceased persons, where they are part of the *res gestæ*, are admissible in evidence. *Van Deusen* v. *Turner*, 12 Pick, 532 ; *West Cambridge* v. *Lexington*, 2 Pick. 536 ; *Tenney* v. *Evans*, 14 N. H. 347 ; *Plumer* v. *French*, 22 N. H. 450.

4. The testimony of John S. Rollins, as to the conversation with Merrill, should not have been admitted. Selectmen cannot, by their mere acts or declarations, change the settlement of a pauper ; they cannot, by their agreement with another town, make their town liable for his support; they have not a general authority to bind their town. *Andover* v. *Grafton*, 7 N. H. 300 ; *Jaffrey* v. *Cornish*, 10 N. H. 511 ; *Peterborough* v. *Lancaster*, 14 N. H. 383. The act of an agent, to be given in evidence against the principal, must be shown to have been within the scope of his authority. *Hopkinton* v. *Springfield*, 12 N. H. 328 ; *Glidden* v. *Unity*, 33 N. H. 571. This case finds that Merrill, although one of the selectmen, was not overseer of the poor, but one Walker was. If he had paid the bill, he would not have been acting within the scope of his authority. His declarations relative thereto, then, could not have been binding upon the town. *Woods* v. *Banks*, 14 N. H. 101. The representation, declaration, or admission of the agent, does not bind the principal, if it is not made within the scope of his authority, or if it is not made at the very time of the contract, but upon another

occasion ; or it does not concern the subject matter of the contract, but some other matter, in no degree belonging to the *res gestæ.* Stor. Ag. 163, 164.

5. The evidence that the selectmen's book had been altered and mutilated, for the purpose of concealing evidence, by some person or persons in the defendants' interest, as was claimed by the plaintiffs, was not competent, and should not have been admitted. The books of the selectmen could not be conclusive evidence of an assessment, but are subject to alteration and correction by the selectmen. At most, they could be but *primâ facie* evidence. *Wakefield* v. *Alton,* 3 N. H. 378 ; *Blake* v. *Sturtevant,* 12 N. H. 567. The books could not be evidence, unless it appeared that they had been kept by the proper officer. *Haynes* v. *Brown,* 36 N. H. 545. The record of the assessment of a tax is not merely record evidence of the assessment ; it is the assessment itself. *Perkins* v. *Langmaid,* 36 N. H. 501. The books of the selectmen were produced, and offered in evidence by the plaintiffs. They did not attempt to show the assessment of a tax from 1803 to 1810, by any other evidence. They attempted to supply the portions missing from them by presumption— the lowest degree of secondary evidence. They, of all persons, should not be permitted to discredit them. The entry with regard to Lemuel Twombly was not competent. It was *res inter alios.* These were very ancient books, and of course many matters which at the time of the transaction were capable of explanation, could not now be explained—especially upon the spur of the moment. The court should take good precaution that such matter was pertinent and material to the issue on trial, and that so serious a charge against a public corporation as a town, was not entertained upon slight or frivolous pretexts.

6. The jurors from Gilmanton were not drawn so as to be competent to sit in the case.

*L. W. Clark* and *G. W. Morrison,* for the plaintiffs.

1. The motion for a nonsuit was waived by the defendants' proceeding and putting in evidence. *Quimby* v. *Melvin,* 35 N. H. 207 ; *Oakes* v. *Thornton,* 28 N. H. 44.

2. The selectmen's books were competent. The case shows it was admitted that there were no records of invoice or assessments of taxes upon the town-clerk's books prior to 1820. The selectmen's books were not secondary evidence. They contained the original records, and the only records that were ever made of the invoice and assessment of taxes, as was admitted. By the act of February 8, 1791, the selectmen were required to make an assessment of taxes seasonably in every year, and to cause a fair entry and record to be made of all invoices by them taken, and assessments by them made, in a book of records of the doings and proceedings of the selectmen in their said office. The record of the assessment of a tax is not merely record evidence of the assessment; it is the assessment itself. *Perkins* v. *Langmaid,* 36 N. H. 501. The invoice of property recorded in the books of the selectmen is *primâ facie* evidence of a proper invoice, until the contrary is shown. *Blake* v. *Sturtevant,* 12 N. H. 567. The validity of the assessment of taxes is not affected by the neglect of the selectmen to have it recorded on the town-clerk's records. *Scammon* v. *Scammon,* 28 N. H. 419. See, also, as to the competency of the selectmen's books, and that less strictness is required in the admissibility of ancient records than in those which are recent, *Boston* v. *Weymouth,* 4 Cush. 538 ; *Bishop* v. *Cone,* 3 N. H. 515 ; *Northwood* v. *Barrington,* 9 N. H. 369 ; *Cavis* v. *Robertson,* 9 N. H. 524 ; *Peterborough* v. *Lancaster,* 14 N. H. 392 ; *Adams* v. *Stanyan,* 24 N. H. 405 ; *Willey* v. *Portsmouth,* 35 N. H. 309 ; *Little* v. *Downing,* 37 N. H. 364 ; and *Sumner* v. *Sebec,* 3 Gr. 223, where it was held that a book found in the hands of the town-clerk, purporting to be a record of births and marriage, was, *primâ facie* evi-

dence of the facts contained in it, although it had no title, certificate, or other attestation of its character. In this case the books were produced by the defendant, upon notice, and it was admitted that they were the selectmen's books of Barnstead, and it was not necessary for the plaintiffs to offer farther proof of their genuineness.

3. The evidence with respect to Theodore Willey's paying from eighty to one hundred dollars for his son in 1813, was competent, as tending to show his ability to pay his taxes.

4. The interrogatories and answers in the depositions of Nancy Elliott were properly excluded. The fact as to whether Theodore Willey was ever in jail or not, was entirely irrelevant and immaterial. There is no presumption that the witness understood the fact from any declarations of her father made at the time. The answer clearly shows that she derived her information from other sources, and that it was merely hearsay; besides, the defendants were not prejudiced by the ruling of the court, because the fact was afterward admitted upon the trial, that said Willey was in jail; and the defendants might then have read the interrogatories and answers, if they had desired to do so. *Flanders* v. *Davis*, 19 N. H. 139.

5. The evidence with regard to the relief furnished to Chandler Willey was properly received, as tending to show an admission that Theodore Willey had a settlement in Barnstead. *Hopkinton* v. *Springfield*, 12 N. H. 328.

6. The ruling of the court, admitting the testimony of John S. Rollins as to the conversation with J. B. Merrill, was correct. Merrill was at that time one of the selectmen of Barnstead, and as such was acting within the scope of his authority in agreeing to pay the claim made by the town of Loudon against the defendants. It was the duty of the selectmen to pay the bill, and they had authority to do so, notwithstanding Walker was overseer of the poor that year; and Merrill's declarations and admissions,

made at the time, and about the business, were competent evidence against the defendants. *Hopkinton* v. *Springfield,* before cited.

7. The evidence in regard to the mutilation of the selectmen's books, under the instruction of the court, was properly received. The question submitted to the jury upon this point was clearly a question of fact upon the evidence before them. *Omnia presumuntur contra spoliatorem.*

8. No question arises upon the exception as to presumption of payment of taxes, because the jury were instructed that inasmuch as both parties had offered evidence upon this point, they were to find the fact of payment upon the evidence submitted to them.

If the question did arise, it is settled in *Hopkinton* v. *Springfield,* 12 N. H. 328; *Dalton* v. *Bethlehem,* 20 N. H. 505; *Colebrook* v. *Stewartstown,* 28 N. H. 75; *Andover* v. *Merrimack Co.,* 37 N. H. 437.

9. The question raised by the exception with regard to the jurors from the town of Gilmanton, has been already determined. *Bodge* v. *Foss,* 39 N. H. 406.

NESMITH, J.* 1. If the assessments upon the selectmen's books were in proper form, we need not inquire whether the defendants can now insist upon the exception to the refusal of the court to order a nonsuit. *Quimby* v. *Melvin,* 37 N. H. 207; *Oakes* v. *Thornton,* 28 N. H. 47. We think the defendants' motion was properly overruled.

By the act of 1796, if Theodore Willey resided in Barnstead, was taxed for his poll for the term of seven years, and paid all taxes legally assessed on his poll and estate during that term, he gained a settlement there. Laws of 1815, 363. The selectmen were required to make assessments of taxes, and to record them in their

* BELLOWS, J., having been of counsel, did not sit.

book, which was to be the property of the town, and open to any of the inhabitants of the town. Statute of 1791 ; Statute Laws of 1805, pp. 213, 214. The book, therefore, seems competent to show the assessment. If the records in it are to be held to be the assessments — *Perkins* v. *Langmaid,* 36 N. H. 507 — it would seem, then, that there could not be any better proof of such assessments than the assessments themselves. *Bucksport* v. *Spofford,* 3 Fairf. 489. In any event, the book furnishes *primâ facie* evidence of the assessment, and that is sufficient. *Blake* v. *Sturtevant,* 12 N. H. 567. We need not examine the merits of the case *Wakefield* v. *Alton,* 3 N. H. 378, where it is held that such books are not conclusive evidence of the assessment, but are open to correction, until left for record with the town-clerk. This question does not arise here.

2. But there is no record of these assessments in the town-clerk's office. It has been held in Massachusetts, under a statute requiring the assessors to file the invoice in their own or in the town-clerk's office, that, as between the assessors and the tax-payers, a tax was illegal, if the invoice were not so filed. *Thayer* v. *Stevens,* 1 Pick. 482 ; *Thurston* v. *Little,* 3 Mass. 432. A sale of land for non-resident taxes has been held invalid in this State, unless the invoices and assessment were left with the town-clerk for record. *Cardigan* v. *Page,* 6 N. H. 192. In these cases much stress is laid on the necessity of such deposit or record, in order that those taxed may inspect the invoice. That reason does not exist in this case, for this was a resident tax, and by statute the selectmen's books were open to the inspection of the inhabitants of the town. Statutes of 1805, 214. Without inquiring whether such an objection is open to the town that has received the taxes, or how far those cases are distinguishable from the present, it would be sufficient to hold that the clause in the act of 1791 was merely directory as to resident taxes, and that the validity of their assessment was not affected

by non-compliance with the statutory direction. A similar clause in the Revised Statutes, providing that the invoice and assessment shall be left with the town-clerk for record before July 1st, was held directory only; at least, as to all such taxes as were collectable before that date. *Scammon* v. *Scammon,* 28 N. H. 431. The act of 1791 merely required that such invoice and assessment, or copies of them, should be left seasonably with the town-clerk for record. Statutes of 1805, 214. The selectmen were to make and commit lists of their assessments to the collectors, with warrants; and the collectors were seasonably to collect such taxes. There seems to have been nothing in the statutes then in force that required such record in the town-clerk's office before the committal of the lists to the collectors, and, so far as the taxes of residents, at least, are concerned, the reasoning in *Scammon* v. *Scammon* is applicable.

But even if such record or deposits were essential, as the transaction was an ancient one, the jury might have presumed a compliance with the law. *Blossom* v. *Cannon,* 14 Mass. 178; *Freeman* v. *Thayer,* 33 Me. 84. They might have found, upon the evidence, the former existence, and the loss of the record, or that copies from the record had been duly left with the town-clerk; *New-Boston* v. *Dunbarton,* 15 N. H. 205; 1 Gr. Ev. 509; *Downing* v. *Pickering,* 15 N. H. 349; *Dillingham* v. *Snow,* 5 Mass. 547; *Stockbridge* v. *West-Stockbridge,* 12 Mass. 400; and the books would have been competent on this question. *Bow* v. *Allenstown,* 34 N. H. 369; *Boston* v. *Weymouth,* 4 Cush. 538. They were the property of the defendants, kept by their agents, the selectmen, and seem to have come from their custody; and whether open to the public inspection or not, were competent evidence against the defendants. *Currier* v. *Boston and Maine Railroad,* 21 N. H. 223. If, then, these books showed the assessment in proper form, for seven successive years, of a tax upon Theodore Willey

for his poll, that was competent evidence, upon which the jury might have found that he was so taxed for that term of time. As more than twenty years had elapsed since the taxation, the jury might have presumed the taxes paid. *Andover* v. *Merrimack County*, 37 N. H. 441; *Grantham* v. *Canaan*, 38 N. H. 269. If, then, these books contained the assessment of taxes for seven years successively against Willey, for his poll and estate, the motion for a nonsuit for this reason was properly overruled.

3. To rebut the evidence of Theodore Willey's poverty and inability to pay taxes during this period, introduced by the defendants, the evidence submitted by the plaintiff, tending to show that he, Willey, had money and other property during this time, was properly admitted. *Wiggin* v. *Plummer*, 31 N. H. 268.

4. That part of Nancy Willey's deposition, cited in this case, was properly rejected by the court. It was immaterial to the issue, and, besides, it was objectionable, as introducing mere hearsay.

5. The fact that Chandler Willey, having no settlement, except by derivation from Theodore Willey, was supported by the defendants, was competent. *Hopkinton* v. *Springfield*, 12 N. H. 329; *Harpswell* v. *Phippsburgh*, 29 Me. 317. As such evidence is received, because it is in the nature of an admission of the party sought to be charged, it is immaterial to whom it was made. No attempt is here made to charge the support of a pauper not having a settlement in Barnstead upon that town, but the plaintiffs are simply endeavoring to show that the pauper had a settlement there; and upon that question the admission of the defendants is competent, under the circumstances of this case. For this reason the cases, *Peru* v. *Turner*, 1 Fairf. 189; *Peterborough* v. *Lancaster*, 14 N. H. 390, are not in point. There are other cases where similar facts have been offered as an estoppel, and have been held not to be such. These are not in point, for the question in

such cases was not whether such facts were evidence, but whether they were conclusive evidence.

6. The instructions as to the alleged mutilation of the books, which appear to have come from the defendants' custody, were sufficiently favorable to the defendants, especially when taken in connection with the other evidence tending to show a settlement in Barnstead. 1 Phill. Ev. 447 ; *Hargood* v. *Wright*, Cowp. 86 ; Broom's Leg. Max. 726 ; 1 Kent Com. 157 ; 1 Gr. Ev. 37, 196 ; 1 Stark. Ev. 563. Some of the authorities make a distinction between the effect of the destruction of evidence and the mere non-production of it. *Cross* v. *Bell*, 34 N. H. 86, and authorities *supra*. But upon the instructions given, taken in connection with the other evidence, it is unnecessary to consider that question, as, in any view, the defendants were not prejudiced by the directions of the court.

Upon the questions arising as to the alleged mutilation of the books, it was proper for the jury to consider their whole appearance, and, among other things, any evidence they presented of a fraudulent alteration. *Knight* v. *Heath*, 23 N. H. 413, 414.

7. The objection, made to the statement of Rollins, that Merrill promised to pay the claim of Loudon in two weeks, would, no doubt, have been well taken, had that agreement been introduced for the purpose of showing, or had it been relied upon by the plaintiffs as tending to show, any contract by which the town of Barnstead was bound or became liable to pay the claim in question ; but the witness had made certain statements in regard to the books of Barnstead, and it would seem that the plaintiffs relied upon these statements as tending to show that Theodore Willey had a settlement in Barnstead, or at least that the witness came to that conclusion from examining their books. The defendants then inquired if that claim was ever sued, and the witness answered, No, and there the matter was left, from which the defendants might

perhaps reasonably assume, and would probably assume, that the witness could have come to no such conclusions in regard to the liability of Barnstead, from an examination of their books. But to show how this fact was, and that it was merely to show the reason why no suit was brought upon this claim by Loudon after they had taken pains to investigate the case, the witness stated, upon inquiry, this arrangement with Merrill at the muster, and thus the witness, as the agent of Loudon, relying upon that agreement, took no measures to collect the claim; that the claim was not paid, and that ninety days had expired in which notice must be given. This simply explains why no suit was brought upon their claim by Loudon; and as the case finds that this was the only purpose for which the evidence was introduced, we see no reason why it was not properly admitted for that purpose, as explanatory of a fact, drawn out on cross-examination of the witness Rollins.

8. The instructions as to the payment of taxes were sufficiently favorable to the defendants. Had there been no evidence upon this point, the jury, after such a lapse of time since their assessment, might have presumed them paid. They were in fact directed, that as evidence had been introduced by both parties upon this subject, they were to find according to the preponderance of the evidence, and of this the defendants have no reason to complain.

9. The questions raised by the exception to the jurors from Gilmanton, who served on the panel that tried this cause, were considered and settled in *Bodge* v. *Foss*, 39 N. H. 406. As the venires and return showed the facts, it was too late to take this objection after verdict.

There must, therefore, be

*Judgment on the verdict.*